## A93A0161. SMITH v. THE STATE.
### (433 SE2d 694)

BIRDSONG, Presiding Judge.

Jerry Smith appeals his conviction of armed robbery at a dry cleaners. The evidence shows a black woman and a black man came to the dry cleaners, asked for an employment application, stayed in the cleaners for several minutes, and then left taking the application with them. Shortly thereafter, the black man returned with the application, used the bathroom, and after mumbling something about the application he announced he had a gun and grabbed an assistant manager by the arm. The robber asked for money, and after taking money from the cash register, he fled.

The assistant manager could not testify definitely the man had a gun because the man kept his hand in his pocket. Nevertheless, he believed the man had a gun and it appeared that the hand in the pocket was gripping something.

The assistant manager testified that because of his fear, he did not look closely at the robber's face. Instead, he looked at the man's hand and noticed that the man was wearing a distinctive, homemade silver ring. Later, the assistant manager identified, as this ring, one that had been taken from Smith by the police.

An employee, who was working when the woman and man were in the store seeking the employment application and when the store was robbed, gave the police the name of the woman who was in the store. She also described the robber as a real dark and real black man. When the police contacted the woman who was in the store earlier, she told the police that Smith was the man with her. When the police contacted Smith, he was wearing a ring similar to the one described by the assistant manager.

With Smith's consent, the police took photographs of Smith and used them to assemble a photographic lineup. Although the assistant manager did not identify Smith from the photographic lineup but identified another person, the store employee identified Smith. Smith was apprehended and his ring seized.

At trial both the assistant manager and the employee testified about these events. The employee testified that she had identified Smith from the photographic lineup and also made an in-court identification. Subsequently, Smith was convicted and sentenced to nine years in prison with six to serve and the remainder on probation.

On appeal, Smith contends the trial court violated OCGA § 17-8-57 by expressing or intimating an opinion as to what had been proved by the State, and also contends the trial court erred by admitting evidence of Smith's out-of-court and in-court identifications and by failing to give his requested charge on the definition of an offensive weapon. He also asserts that he was denied the effective assistance of counsel and that the evidence was insufficient to establish his guilt of the crime of armed robbery beyond a reasonable doubt. *Held*:

1. Smith's first contention is that the trial court charged the jury to find Smith guilty of Count 1 and eliminated the lesser included offense of robbery by intimidation by removing the reasonableness of the victim's apprehension from the jury's consideration. This contention is based upon the charge that Smith could be convicted of armed robbery with an offensive weapon if the jury found that the robbery was committed by simply using his hand in his pocket to simulate a pistol. Therefore, he contends that the jury was precluded from finding Smith guilty of robbery by intimidation.

We find no violation of OCGA § 17-8-57. The jury was charged that "a person commits the offense of armed robbery when, with the intent to commit theft, he takes property of another from the person, or the immediate presence of another, by the use of an offensive weapon or by the use of any replica, article, or device having the appearance of an offensive weapon." The jury was then charged that the presence and use of an offensive weapon or a replica thereof might be proven by circumstantial evidence even though the weapon or replica was neither seen nor accurately described. The trial court then charged the jury that "a replica having the appearance of an offensive weapon means any *reasonable belief* on the part of the victim that an offensive weapon is present, which is obtained by the victim through the use of . . . his senses." (Emphasis supplied.) In view of this correct charge, we find Smith's contention regarding the reasonableness of the victim's belief to be without merit.

Smith further asserts that the trial court's explanation of the use of the verdict form also violated OCGA § 17-8-57. We find no such defect. The instructions were couched in terms of actions to be taken *if* the jury found certain facts, and the trial court did not state or intimate what had been proven. *Trull v. State*, 221 Ga. 442 (145 SE2d 242).

2. Smith also contends the evidence was insufficient to establish that a weapon was used in the robbery. We have examined the transcript and find the evidence sufficient within the meaning of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). As long as the victim had a reasonable apprehension that an offensive weapon was used, it is not necessary that he actually see the weapon. *Johnson v. State*, 195 Ga. App. 56, 57 (392 SE2d 280). In this case the victim's

testimony that he believed the robber's statement that he had a gun and that he saw the perpetrator's hand in his pants pocket as if he had a gun was sufficient.

3. Smith also contends his trial defense counsel was inadequate and ineffective because he failed to interview personally and secure the attendance of an essential witness, the woman Smith allegedly accompanied to the dry cleaners. Smith had the burden of establishing that his trial defense counsel's performance was deficient and that the deficient performance prejudiced his defense. *Brown v. State*, 257 Ga. 277, 278 (357 SE2d 590). His burden was to show there was a reasonable probability the result of his trial would have been different, but for his defense counsel's unprofessional deficiencies (*Baggett v. State*, 257 Ga. 735 (363 SE2d 257)), and in doing so must overcome the strong presumption that the representation was effective. *Clarington v. State*, 178 Ga. App. 663, 667 (344 SE2d 485).

The transcript of the hearing conducted on counsel's alleged inadequacy shows that the witness was interviewed on behalf of the defense by two students from the legal aid clinic after defense counsel was unsuccessful in his attempts to see her; and that the witness was subpoenaed as a State's witness and had already informed the police that Smith was the person with her at the scene of the crime. Moreover, Smith testified that his trial defense counsel emphasized to Smith that he believed the witness would hurt Smith's case. Significantly, Smith did not assert that this witness would provide him with an alibi or other defense. Instead, Smith testified repeatedly he wanted the witness to testify so he could see what she had to say. Under these circumstances, we do not find counsel's performance was inadequate within the meaning of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674). "In the absence of testimony to the contrary, counsel's actions are presumed strategic. [Cit.]" *Earnest v. State*, 262 Ga. 494, 496-497 (422 SE2d 188). Judgmental and tactical errors do not always equate ineffective assistance of counsel. *Clarington*, supra. Although another trial defense counsel may have called this witness if indeed she could have been located, or might have pursued a different strategy, this does not constitute denial of the effective assistance of counsel. *Heard v. State*, 177 Ga. App. 802, 804 (341 SE2d 459). Further, this witness could not be located and did not appear at trial even though subpoenaed by the State, and it does not appear that trial defense counsel could have produced her.

4. Smith contends that his out-of-court and in-court identifications were tainted because of his out-of-court identification was based upon an impermissibly suggestive photographic lineup. His contention is based on the witness' telling the investigators that the man who robbed the store was "real, real dark and real black" and had a "dark complexion," and both the witness and the police officer testi-

fied that Smith was the person in the photographic lineup with the darkest complexion. Conversely, the police officer who prepared the photographic lineup testified that he made an effort to avoid any suggestiveness in the lineup, and attempted to put photographs in the lineup of individuals with hair cut and facial hair similar to Smith's. Additionally, the officer testified he told the witness he was not obliged to identify anyone from the photographic lineup, that the officer could not say whether the suspect was in the lineup or not.

One of the difficulties with Smith's argument is that while the police might be expected to make a good faith effort to duplicate his skin color, Smith has presented no authority that a failure to match complexions requires reversal. Instead, the test "is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *McCoy v. State,* 190 Ga. App. 258, 260 (378 SE2d 888). The considerations in evaluating the likelihood of misidentification include: (a) the opportunity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the identification, and (e) the length of time between the crime and the identification. *Neil v. Biggers,* 409 U. S. 188 (93 SC 375, 34 LE2d 401); *McCoy v. State,* supra. In this instance, the witness testified she saw Smith when he entered the store the first time with the woman and at that time the woman called to the witness and attracted her attention. She further testified that when Smith returned to the store she knew he was the same man who had been there earlier because she got a good look at him the first time, and when he returned he aroused her suspicion because he was looking around as if to see if anyone was in the cleaners. Further, she testified that Smith twice passed very close to her. We conclude that under the "totality of the circumstances," *Neil v. Biggers,* supra, the procedures used in this case were not so impermissibly suggestive as to cause a very substantial likelihood of irreparable misidentification.

Assuming arguendo that some taint occurred in the pretrial identification, a witness' in-court identification may be admitted if it has an "independent origin." *McCoy v. State,* supra. See *Jones v. State,* 258 Ga. 25, 27 (365 SE2d 263). We find the circumstance in which the witness observed Smith, that the witness' in-court identification had an independent origin.

5. Smith asserts that the trial court erred by refusing his written request to charge the jury on the definition of an offensive weapon. He contends the jury had no guidance on whether the evidence was sufficient to establish use of an offensive weapon. We find no error. The charge given advised the jury of the applicable law, and the trial court is not required to instruct on the meaning of all words used in

the charge, particularly words of common understanding. *Floyd v. State*, 193 Ga. App. 17 (387 SE2d 16). Further, the jury was not required to find the actual presence of an offensive weapon as long as they were convinced beyond a reasonable doubt that defendant employed a replica having the appearance of an offensive weapon so as to create a reasonable apprehension on the part of the victim that it was an offensive weapon. See *Johnson v. State*, supra. Additionally, the requested charge defined an offensive weapon as one which if used in its usual and accustomed manner is likely to produce death. As weapons likely to produce bodily injury can be offensive weapons (*Hambrick v. State*, 174 Ga. App. 444, 445 (330 SE2d 383)), this charge was incorrect and the trial court did not err by refusing to give it. A request to charge itself must be correct, legal, apt, and precisely adjusted to some principle involved in the case. If *any portion* of the request is inapt or incorrect, denial of the request is proper. *Mattox v. MARTA*, 200 Ga. App. 697, 699 (409 SE2d 267).

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED JULY 1, 1993 —
RECONSIDERATION DENIED JULY 16, 1993 — 

*J. Hue Henry*, for appellant.

*Harry N. Gordon*, District Attorney, *Richard L. Dickson*, Assistant District Attorney, for appellee.