A94A1850. JOHNSON v. THE STATE.
(448 SE2d 80)

ANDREWS, Judge.

Robert Johnson was tried and convicted of one count of selling cocaine and appeals.

Evidence at trial was that Officer Piper of the Monroe County Sheriff's Department was assigned to assist Officer Williams of the Butts County Sheriff's Department in an undercover drug investigation in Butts County. At about 5:00 p.m. on February 6, 1993, Piper, who was undercover, was driving in the area to which he had been

assigned, when he observed a person waving his vehicle down. Piper rolled his window down and the person offered to sell Piper $20 in crack cocaine. Piper stated that the person leaned into his car to transact the sale and that Piper observed his appearance during the ten to fifteen second transaction.

Piper then went to a prearranged location to meet Williams. Piper's written report from the undercover buy stated that the suspect was a black male, who was 5'8" to 5'10" tall and weighed 180 to 200 pounds, and that he was wearing a red cap, red button-up sweater, and a white Falcon tee-shirt with the words written in red letters. Piper gave Williams this description and Williams then went to tour the area from which the drugs had been bought. Williams ascertained the identity of the drug seller, returned to Piper, and showed him several photographs, from which Piper selected the photograph of Johnson. Piper positively identified Johnson at trial as the man from whom he bought the drugs.

Williams testified at trial that about 15 minutes after the buy, Piper told him that he had purchased suspected cocaine from a black male who was wearing a red baseball cap, a red and white long sleeved sweater with "Atlanta" on it, blue jeans, and white tennis shoes. Piper told him that the person had a goatee and a long chin, was between 5'8" to 5'10" in height and weighed 180 to 200 pounds. After Williams received this description, he rode in the vicinity of the drug purchase and saw a black male who fit the description given by Piper. Williams identified this person as Robert Johnson.

Williams testified that he then selected five to six photographs of individuals who fit Johnson's description. Williams showed Piper the photographs about 30 minutes after the buy and Piper positively identified Johnson from the photographic line-up. On cross-examination, Williams admitted that at a hearing on August 13 (of which there is no transcript) the picture of Johnson which Piper selected was omitted.

1. In his first and second enumerations, Johnson claims that the court erred in denying his motion to suppress the pre-trial and in-court identification of him.

On September 2, 1993, the court held its hearing on the motion to suppress, at which Piper testified that he had purchased the drugs from a black male who was about 5'6" to 5'8". The remainder of Piper's description was the same as that to which he testified at trial. At the hearing, Piper stated that he was about one foot away from the person who sold him the cocaine, that the area was light, and that he studied the person carefully during the buy. Piper recalled that he had no difficulty identifying Johnson's photograph during the line-up and that there was nothing to make Johnson's photograph stand out from the others. Piper identified Johnson at the hearing and stated

that he could identify Johnson "without a doubt." On cross-examination, Piper stated that he had reviewed the photographic line-up before the hearing and that he again had identified Johnson.

Officer Williams' testimony at the hearing was quite similar to his trial testimony. Williams verified the pictures which he had shown Piper, and stated that he had kept all of them together in an envelope.

The court ruled that the pre-trial identification was admissible and that nothing had been done to taint the in-court identification. The court found that Piper had sufficient time to view the perpetrator at the time the transaction took place; that the transaction took place in good daylight; that Piper was a trained officer and had conducted many of these types of investigations; and that he had written down a detailed description.

Here, Johnson argues that the photographic line-up was impermissibly suggestive and that there was a substantial likelihood of irreparable misidentification. He argues that the manner of selecting the photographs, the fact that the photographic array could not be reliably reconstructed and the absence of persons similar in appearance to him made the line-up impermissibly suggestive. Johnson argues that Piper had only a brief opportunity to view the accused, and that his degree of attention is suspect based on generalities, mistakes and inconsistencies in his description. Johnson argues that procedural irregularities, such as the fact that Williams could not satisfactorily explain why the photograph of Johnson was missing on August 13, 1993, should bar the pre-trial identification. Johnson also contends that the court erred in allowing the in-court identification, since there was no independent basis for that identification.

With regard to the photographic line-up, "[c]onviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citations and punctuation omitted.) *Daniels v. State*, 207 Ga. App. 689, 691 (4) (428 SE2d 820) (1993). "The test is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The considerations in evaluating the likelihood of misidentification include: (a) the opportunity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the identification, and (e) the length of time between the crime and the identification." (Citations and punctuation omitted.) *Smith v. State*, 209 Ga. App. 540, 543 (4) (433 SE2d 694) (1993). Despite Johnson's arguments, we find no fatal irregularity in the fact

that his photograph was allegedly missing from the assembled group on August 13. After reviewing the record, it does not appear that either the photographs or the procedures used were so impermissibly suggestive as to cause a very substantial likelihood of irreparable misidentification. Accordingly, the trial court did not err in denying the motion to suppress the pretrial identification.

"Assuming arguendo that some taint occurred in the pretrial identification, a witness' in-court identification may be admitted if it has an independent origin." (Citations and punctuation omitted.) *Smith*, supra at 543. We find that Piper's identification had an independent origin and thus, his in-court identification was properly allowed. Because of these findings, we reject Johnson's argument that the trial court should have excluded the identification since his counsel was not present when Piper viewed Johnson in jail the morning of trial. See generally *Foster v. State*, 160 Ga. App. 326 (287 SE2d 323) (1981).

2. In his third and fourth enumerations, Johnson argues that the court erred in denying his motion for a directed verdict of acquittal and that the evidence was insufficient to convict.

For the reasons stated in Division 1 above, the identification testimony was properly admitted. There was no error in the denial of the motion for directed verdict. *Reed v. State*, 205 Ga. App. 209, 211-212 (4) (422 SE2d 15) (1992). Moreover, we find that a rational trier of fact could find from the evidence adduced at trial proof of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Beasley, P. J., and Johnson, J., concur.*

DECIDED AUGUST 17, 1994.

*Hemmann & Hemmann, Paul E. Hemmann*, for appellant.
*Tommy K. Floyd, District Attorney, Shelley S. Howard, Assistant District Attorney*, for appellee.

