## S02A1181. COHEN v. THE STATE.
(570 SE2d 301)

HINES, Justice.

Jeremine Jerome Cohen appeals his convictions of two counts of malice murder and two counts of possession of a firearm during the commission of the murders, in connection with the fatal shootings of convenience store employees, Chadrakant Patel and Eric Cordele. Cohen challenges the sufficiency of the evidence to support the verdicts, the admission of evidence of his bad character, the admission of certain photographic evidence, and the jury's possession of a transcript of an interview with Cohen's sister. Finding the challenges without merit, we affirm.[1]

The evidence, which included the testimony of various eyewitnesses, showed that on March 21, 2000, Patel and Cordele were working at a Chatham County convenience store when, at approximately 7:15 p.m., a dark-skinned African American man entered the store wearing a blue, hooded sweatshirt ("hoody") and an orange bandanna around his face. The man was wielding a pistol; he went to the

---

[1] The crimes occurred on March 21, 2000. On June 21, 2000, a Chatham County grand jury indicted Cohen for: (1) the malice murder of Chadrakant Patel; (2) the felony murder of Chadrakant Patel while in the commission of aggravated assault; (3) the felony murder of Chadrakant Patel while in the commission of possession of a firearm by a convicted felon; (4) possession of a firearm during the commission of the murder/felony murder of Chadrakant Patel; (5) the malice murder of Eric Cordele; (6) the felony murder of Eric Cordele while in the commission of aggravated assault; (7) the felony murder of Eric Cordele while in the commission of possession of a firearm by a convicted felon; and (8) possession of a firearm during the commission of the murder/felony murder of Eric Cordele. Cohen was tried before a jury February 12-15, 2001, and was found guilty on all counts. By order dated February 15, 2001, and filed on February 26, 2001, Cohen was sentenced to life in prison on Count 1; five years in prison on Count 4, to be served consecutively to the sentence on Count 1; life in prison on Count 5, to be served consecutively to the sentence on Count 1; and five years in prison on Count 8, to be served consecutively to the sentence on Count 5. Counts 2, 3, 6, and 7 were vacated by operation of law. See *Malcolm v. State,* 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). A motion for new trial was filed on February 20, 2001, amended on September 10, 2001, and denied on March 8, 2002. A notice of appeal was filed on March 13, 2002, and the appeal was docketed in this Court on April 19, 2002. The case was submitted for decision on June 10, 2002.

counter and shot Cordele and Patel, then fled the scene.

When police arrived, they found the fatally-wounded Patel and Cordele behind the counter; three or four other people were inside the store and six to twelve people were outside. A forensic investigator arrived to photograph, videotape, and diagram the crime scene; Cordele's body remained at the scene, but Patel had been transported to the hospital.

Knight and Robinson were in the store at the time of the shootings and they were able to describe the shooter's physical characteristics, clothing, and behavior. Also Robinson testified that she and her children knew Cohen, and that Cohen went to Robinson's home after she returned from her interview with police following the shootings, but Robinson refused to speak with him.

Cohen had also been to Robinson's home between 6:00 p.m. and 7:00 p.m. on the night of the killings, after Robinson had already left to go to the convenience store. Robinson's ten-year-old daughter was home and observed Cohen wearing a black hoody. Cohen left on a bicycle, but later returned wearing a blue hoody and with an orange scarf hanging from his pocket. Cohen told the girl to tell her mother that he was "going to the store."

Waters, who knew Cohen by sight, observed Cohen outside the convenience store prior to the shooting. Cohen was wearing blue jogging pants, a blue hoody, an orange shirt, and an orange bandanna; he had the bandanna pulled up over his mouth and nose. Cohen seemed to be "in a rage," and stated "I'm going to rob this. I'm fixing to lay them down." He told Waters that earlier the store clerk Cordele had pulled a pistol on him and that he "couldn't take it," he was "thinking about that all day long." Waters tried to dissuade Cohen from retaliation, and began to leave when Cohen entered the convenience store. Within three or four seconds, Waters heard gunshots from inside the store. Waters continued down the street and then noticed Cohen coming from behind. Cohen had removed his hoody and was pushing a bicycle; he appeared "shaky, nervous." Waters commented to the woman he was with, "[t]here go that crazy m—— -f—— that just killed them people in that store." Waters was afraid that Cohen would shoot him too, so he allowed Cohen to accompany him by bicycle to the woman's house to smoke marijuana. But Cohen told Waters he could not stay because a man named Bias "looked me right in my face in that store."

Bias testified that he observed a young man standing outside the convenience store. Shortly after Bias entered the store, the man, who was wearing a hoody, blue pants, and an orange scarf over his face, peeped in the window, came in the store with a pistol, shot both clerks, and ran out without taking anything. Later that evening, Bias saw Cohen and Waters on a bicycle. Bias had gotten a good look at

the shooter because he "looked [him] right in [the] eyes," and Bias identified Cohen in court as the perpetrator.

Green, Cohen's sister, saw Cohen leaving their home carrying a book bag and wearing blue jeans and an orange shirt. Green looked in the bag and saw a pair of blue sweat pants and a blue hoody. When Green saw Cohen two to three hours later, he was unusually quiet and had changed clothes and was wearing the blue sweat pants that had been in the book bag.

Later, Cohen gave conflicting statements to police as to his whereabouts at the time of the murders. Cohen claimed that he was with specific friends, but this was contradicted by the friends' testimony at trial.

1. There is no merit to Cohen's contention that the State did not prove beyond a reasonable doubt that he was guilty of the malice murders because no witness positively identified him as the shooter when questioned at the crime scene, and because the police did not recover the pistol or any physical evidence that "proved conclusively" that he was the shooter. The evidence of the identity of Cohen as the shooter, including the many eyewitness accounts, was sufficient to enable the jury to find Cohen guilty beyond a reasonable doubt of the malice murders and related crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Holmes v. State*, 269 Ga. 124, 125 (1) (498 SE2d 732) (1998).

2. Cohen contends that the trial court erred in allowing State's witness Bias to testify that Cohen had a "gun" two or three weeks prior to the murders because it was improper character evidence and prejudicial. But the contention is unavailing. The testimony at issue, i.e., that two or three weeks before the shootings, Cohen was seen showing friends a 9-millimeter black pistol in an abandoned house, was from the defense's own witness, Patterson. And Cohen made no objection to such testimony elicited from Patterson on cross-examination, so he cannot now complain of it. *Edmond v. State*, 267 Ga. 285, 288 (4) (476 SE2d 731) (1996). In any event, "[g]un ownership and the custom of carrying a gun do not, by themselves, impute bad character." *Davis v. State*, 272 Ga. 327, 329 (2) (528 SE2d 800) (2000).

3. Cohen next contends that the trial court erred in admitting the crime scene video, State's Exhibit 4, and also two crime scene still photographs depicting Cordele's body, State's Exhibits 9 and 10, because they were duplicates of each other and inflammatory and prejudicial. But the pre-autopsy photographs in question were admissible to show the nature and extent of the victim's wounds and the location of the body at the crime scene. *Hayes v. State*, 268 Ga. 809, 812 (5) (493 SE2d 169) (1997). The fact that the videotape may have duplicated the still photographs to the extent that it too showed

Cordele's body was not cause for its exclusion; it was relevant and admissible. *Floyd v. State*, 272 Ga. 65, 68 (4) (525 SE2d 683) (2000). And the gruesome or inflammatory aspect of the pictorial evidence stemmed entirely from Cohen's own acts. *Ottis v. State*, 269 Ga. 151, 156 (4) (496 SE2d 264) (1998).

4. Lastly, Cohen contends that the trial court erred in allowing the State to provide to the jury a transcript of an interview with Cohen's sister, Green, because jurors are not permitted to take written or recorded statements into the jury room during deliberations. However, that is not what happened here. When the State sought to introduce the audiotaped interview with Green, it requested that each juror be given a transcript so the juror could read along while listening to the tape. The court permitted this but instructed the jurors, both before and after the tape was played, that the transcript was being given as an aid, if the juror so wished to use it; that the transcript was not evidence in the case; and that the actual evidence in the case was the words that they would hear on the tape. Under these circumstances, there was no error in permitting the use of the transcript. *Washington v. State*, 268 Ga. 598, 600 (3) (492 SE2d 197) (1997). The copies of the transcript were collected from the jury after the tape was played, and there is no evidence that any transcripts were sent out with the jury. In fact, the trial court asked counsel to review the items that would be given to the jury during its deliberations, and there was no objection by the defendant.

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 30, 2002.

*Darden, Burns & Burns, Richard M. Darden*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General*, for appellee.