## S09A1847. STEWART v. THE STATE.
### (690 SE2d 811)

BENHAM, Justice.

Appellant Sean Stewart appeals his conviction for the felony murders of Sam Walthour and Edward Morgan.[1] In early May 1998, appellant sold drugs to Sam Walthour for $50,000 in cash. Believing Walthour had more cash in his possession, appellant enlisted three other accomplices to help him rob Walthour. On May 12, 1998, appellant and his accomplices drove from Atlanta to Walthour's house in Liberty County. Two of the three accomplices went inside the house to rob Walthour while appellant and the third accomplice, Chris Hanna, remained in the van. Meanwhile, Edward Morgan, Walthour's friend, came by Walthour's house. Upon approaching the house, Morgan was dragged inside the house. One of the accomplices inside the house fatally shot Morgan and Walthour each in his head.

---

[1] The victims died on May 12, 1998. On November 15, 2000, the Liberty County grand jury jointly indicted Sean Stewart and Keiotta Tubbs for the malice murder of Sam Walthour, the malice murder of Edward Morgan, the felony murders (aggravated assault) of Walthour and Morgan, and the felony murders (armed robbery) of Walthour and Morgan. Appellant was tried alone before a jury on November 14-15, 2005 and found guilty of four counts of felony murder. Two of the felony murder counts were vacated by operation of law. Appellant received a life sentence for each of the two remaining felony murder convictions. Appellant moved for a new trial on November 28, 2005, and amended his motion on January 28, 2008. The motion for new trial was denied on March 6, 2009. Appellant filed a timely notice of appeal on March 25, 2009. The case was docketed in this Court on July 23, 2009, for a decision on the briefs.

670

The accomplices ran out of the house, entered the van, and all four men fled the scene. A witness testified that appellant threw the murder weapon into a river on the way back to Atlanta. Appellant admitted to police and testified under oath that it was his idea to rob Walthour and that he enlisted the others, setting the events of May 12, 1998, into motion.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of felony murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During the trial, one of Walthour's neighbors testified that he heard yelling on the night of the shootings. The prosecutor asked if the witness believed the yelling to be "terrorizing," and appellant objected on the basis of speculation. Once the trial court overruled the objection, the witness responded to the question in the negative. On appeal, appellant complains that the question was irrelevant to appellant's guilt or innocence and that the word "terrorizing" served to inflame the jury. Inasmuch as appellant failed to object on the grounds he now asserts on appeal, this purported error is not preserved for review. *Arrington v. State*, 286 Ga. 335 (13) (a) (687 SE2d 438) (2009); *Helton v. State*, 268 Ga. App. 430 (2) (602 SE2d 198) (2004) (" '(A)n objection different from that made below may not be claimed on appeal; appeal is limited to the ground advanced below.' ").

3. At trial, the State introduced pre-autopsy photos of the victims. Appellant contends the pictures were gruesome and inflamed the jury because they included medical devices such as forceps, rulers, and head rests. Walthour was also depicted with duct tape about his hands and head. Appellant further complains that one of the photographs reflected the shaved head of the victim around the bullet wound and that the photographs were published to the jury via an ELMO projector. Appellant's contentions are without merit.

The admission of photographic evidence is at the discretion of the trial court. *Sweet v. State*, 276 Ga. 545 (2) (580 SE2d 231) (2003); *Dean v. State*, 273 Ga. 806 (546 SE2d 499) (2001). Pre-autopsy photographs of murder victims are generally admissible at trial to show the nature and extent of the wounds inflicted. Id. The record reveals the trial court looked at each pre-autopsy photograph and admitted those that were relevant, and excluded two or three photographs which it deemed to be duplicative. This was well within the discretion of the trial court. The instrumentation appellant complains about, namely forceps holding a ruler next to the head wounds and head rests propping up the victims' heads were merely used to show the extent of the injuries, which is permissible.

*Sheppard v. State*, 285 Ga. 36 (3) (673 SE2d 852) (2009). Likewise, a photograph of the victim's shaved head is merely a means to show the extent of injury and is also permissible. *Brown v. State*, 270 Ga. 601 (6) (512 SE2d 260) (1999). As for the duct tape found on Walthour's body, there was witness testimony that Walthour's assailants used duct tape to bind his hands and cover his eyes, and yellow cord about his feet; therefore, any photographs showing those materials were part of the res gestae of the crime and admissible. See *Williams v. State*, 282 Ga. 561 (3) (651 SE2d 674) (2007) (photographs of the victim as found are admissible). Also, the use of projectors to display undistorted photographs, including pre-autopsy photographs, to the jury is an accepted method of publication at trial. *Jones v. State*, 249 Ga. 605 (2) (b) (293 SE2d 708) (1982). Accordingly, there was no error by the trial court when it admitted the photographs in question and allowed them to be displayed to the jury on a projector.

4. Appellant contends error occurred when: the trial court admitted his custodial statements because he argues the statements were not voluntarily made; the trial court allowed jurors to refer to transcripts while listening to the recording of his verbal custodial statement and the reading of his written custodial statement; and when the trial court admitted appellant's prior sworn testimony from the trial of his accomplice. For the reasons set forth below, there is no error.

(a) Whether a defendant knowingly and intelligently waives his constitutional rights depends on the totality of the circumstances and the trial court's factual determinations on such matters will be upheld unless clearly erroneous. *Reed v. State*, 285 Ga. 64 (3) (673 SE2d 246) (2009); *Bell v. State*, 284 Ga. 790 (2) (671 SE2d 815) (2009). Here, the record shows appellant was arrested on September 13, 2000, in metro Atlanta. At the time of his arrest, he was read his *Miranda*[2] rights, but chose to remain silent at that time. Officers then proceeded to transfer appellant to Liberty County by car. Four hours into the drive, appellant advised officers that he wanted to speak to them. The officers went to the nearest local sheriff's station, which was in Tattnall County, to interview appellant. The officers read appellant his *Miranda* rights a second time and provided him with a waiver form, which appellant signed before any statements were made. Upon signing the waiver, appellant gave a verbal statement, which was recorded, and a written statement. In the absence of any evidence of coercion or receiving a hope of benefit, it was not erroneous for the trial court to conclude that statements

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

were voluntary since, after invoking his right to silence, appellant re-initiated conversation with police, was given his *Miranda* rights a second time, and signed a waiver of rights.

(b) It was also not erroneous for the trial court to allow the jury to refer to transcripts while listening to the recording of appellant's verbal statement and the police officer's reading of appellant's written statement. The trial court gave specific instructions to the jurors that the transcripts were not evidence, that the transcripts would not be sent back to the jury room, and that the jurors were to rely on what they heard when making their factual determinations. The use of the transcripts coupled with the trial court's limiting instruction did not constitute error (*Cohen v. State*, 275 Ga. 528 (4) (570 SE2d 301) (2002)) and, therefore, appellant's custodial statements were properly admitted at trial.

(c) Appellant argues that his prior sworn testimony should have been excluded at his trial because, at the time the testimony was given, he was not represented by counsel and was not given his *Miranda* rights. The record reveals that prior to his trial, appellant entered into a negotiated plea agreement with the State, agreeing to testify against his accomplices. Appellant gave such sworn testimony in November 2003.[3] Two years later, during appellant's trial, the State sought to introduce appellant's sworn testimony. The trial court advised that before the testimony would be admitted, it would have to be redacted to exclude any references to prior unrelated drug deals and references to appellant's plea deal with the State. In addition, the parties stipulated and agreed that no cross-examination or objections would be read, and only appellant's testimony on direct examination would be admitted into evidence. Although one of appellant's two attorneys mentioned that appellant may not have been represented by counsel when he gave sworn testimony in November 2003 and that no *Miranda* warnings were given at the start of the testimony, the parties represented to the court that they were in agreement as to what portions of the prior testimony would come into the record. "A party may not complain on appeal of a ruling that he contributed to or acquiesced in by his own action, trial strategy, or conduct." *Holcomb v. State*, 268 Ga. 100 (2) (485 SE2d 192) (1997). Inasmuch as the parties stipulated and represented to the trial court that they were in agreement over the admission of this evidence, appellant cannot now claim error on appeal. See *Sapp v. State*, 222 Ga. App. 415 (2) (474 SE2d 233) (1996) (by stipulating to the admission of an exhibit, defendant waived any error therefrom).

---

[3] Appellant subsequently withdrew his guilty plea and elected to go to trial. See Division 7, infra.

Thus, there was no error when the trial court admitted the prior sworn testimony as redacted.

5. During the investigation of the events of this case, the authorities presented appellant with a photographic lineup and appellant identified one of the persons in the lineup as his accomplice. Upon further investigation, however, the authorities learned that appellant misidentified his accomplice. At trial, the State elicited testimony to this effect and also proffered a photograph of the actual accomplice which exhibited the accomplice's distinguishing tattoos. Appellant argues that it was error to elicit this testimony and to enter the photograph into evidence. To the contrary, the evidence was relevant and, as such, was admissible, even if it suggested that appellant was untruthful. *Collins v. State*, 273 Ga. 93 (3) (538 SE2d 47) (2000) ("Relevant and material evidence is not inadmissible because it incidentally places the defendant's character into evidence.").

6. Appellant complains that nine of his requested jury charges were not given to the jury. "A trial court's refusal to give a jury charge in the exact language requested by a defendant is not error if the charge given by the trial court substantially covers the applicable principles of law." *Keita v. State*, 285 Ga. 767 (4) (684 SE2d 233) (2009). Here, the trial court declined to give appellant's requests to charge numbers 10 through 17 because they were substantively the same as the charges already requested by the State and which the trial court agreed to give. The trial court did not err as to these charges. Id.

As for the ninth instruction, appellant complains that a charge on impeachment by proof of a crime of moral turpitude should have been given regarding the testimony of Reginald Hallman and Chris Hanna. At the time appellant's trial commenced in November 2005, OCGA § 24-9-84.1 had just been enacted and became effective July 1, 2005. OCGA § 24-9-84.1 (a) (1) provides:

> Evidence that a witness has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the witness was convicted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the witness; . . .

Our review of the trial transcript shows that Hallman[4] was quite forthcoming during his testimony that he was a criminal and had

---

[4] Hallman provided appellant with materials for use in the robbery, but was not one of the three accomplices who accompanied appellant to Walthour's house in Liberty County.

been convicted for his illicit activities which ranged from drug dealing to car theft. Hanna, the accomplice who drove the van to Walthour's house, testified that his testimony was being given pursuant to a plea agreement with the State and, on re-direct, stated that he received four-and-a-half years of probation for robbery. Based on OCGA § 24-9-84.1 (a) (1) and the evidence presented, the trial court was not required to give appellant's requested instruction on impeachment by proof of a crime of moral turpitude; although an instruction on impeachment by proof of a prior conviction was warranted. Any failure to give such an instruction was harmless, however, because neither Hallman nor Hanna were "primary" witnesses. See *Hollomon v. State*, 278 Ga. 143 (2) (598 SE2d 498) (2004). The State's "primary" witness was appellant himself, who admitted he enlisted accomplices to rob Walthour and participated in the events that led to the victims' deaths. Even if the testimony of Hallman and Hanna were discounted, there was overwhelming evidence of appellant's guilt, making it "highly probable" that the trial court's erroneous failure to charge on impeachment by proof of a prior crime did not contribute to the verdict. *McIntyre v. State*, 266 Ga. 7 (4) (463 SE2d 476) (1995). As such, there was no reversible error.

7. When the State gave notice that it would be seeking the death penalty, appellant entered into a negotiated guilty plea deal in June 2002, agreeing to enter a guilty plea and testify against his accomplices in exchange for fifteen years in prison on one count of aggravated assault. In November 2003, appellant testified at his accomplice's trial as agreed. On February 23, 2005, the trial court held a sentencing hearing and advised it was sentencing appellant to fifteen years for one count of aggravated assault as provided by the plea agreement. After the sentence was read, appellant requested to withdraw his guilty plea and go to trial. The trial court advised that it would not consider any further plea deals and, if appellant went to trial, he would be subject to receiving the maximum sentencing for any conviction. Upon conferring privately with counsel and confirming to the judge that he wanted to withdraw his guilty plea, the trial court allowed the plea to be withdrawn. Shortly before his trial commenced in November 2005, appellant moved to enforce the June 2002 plea agreement. On appeal, appellant alleges the trial court erred by denying his motion to enforce. We disagree. Once appellant repudiated receiving the benefit of his bargain, namely a lighter sentence on a lesser charge, and then withdrew his guilty plea, there was no longer a plea agreement for the trial court to enforce. Accordingly, appellant's conviction is sustained.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 15, 2010.

*Ray C. Smith*, for appellant.

*Tom Durden, District Attorney, Melissa L. Poole, Russell B. Mabrey, Jr., Henry P. Smith, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellee.