S13A1051. McKIBBINS v. THE STATE.

(750 SE2d 314)

BLACKWELL, Justice.

Chaunson McKibbins was tried by a Fulton County jury and convicted of murder, kidnapping with bodily injury, and concealing the death of another. He appeals, contending that the evidence is insufficient to sustain his convictions, that the indictment failed to properly charge kidnapping with bodily injury, that the prosecuting attorney made improper and prejudicial statements in the presence of the jury, and that the trial court erred with respect to certain evidentiary rulings and jury instructions. We find no merit in these claims of error, and we affirm.[1]

---

[1] The crimes were committed in late November 2001. McKibbins was indicted on April 16, 2002, and charged with malice murder, felony murder, kidnapping with bodily injury, concealing the death of another, and tampering with evidence. The trial commenced on April 29, 2008, and the jury returned its verdict on May 21, 2008, finding McKibbins guilty on all counts. The trial court sentenced McKibbins to a term of imprisonment for life for malice murder, a consecutive term of imprisonment for life for kidnapping with bodily injury, and a consecutive term of imprisonment for ten years for concealing the death of another. The verdict as to felony murder was vacated by operation of law, *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the tampering with evidence merged into the concealing the death of another. On June 4, 2008, McKibbins timely filed a motion for new trial, and he amended it on December 20, 2011. The trial court denied the motion for new trial on June 26, 2012. McKibbins timely

1. Viewed in the light most favorable to the verdict, the evidence shows that McKibbins — with the help of several associates, including Rico Green — stole two kilograms of cocaine from a drug dealer. Later, the cocaine went missing, and McKibbins suspected that Demetrius Robbins had something to do with its disappearance. In early November 2008, McKibbins met with Robbins's brother, explaining that someone had stolen a substantial quantity of cocaine from him, that he believed Robbins was involved, and that "something needed to be done [with Robbins]."

A few weeks later, on November 18, Robbins went to a house on Wadley Street in Atlanta.[2] McKibbins and several of his associates — including Green, Earnest Lambert, and Raymond Lambert — were at the same house.[3] Robbins eventually wound up in a back room of the house, where he was seen with a black eye, sitting on the floor in his underwear. McKibbins questioned Robbins about the missing cocaine, but Robbins denied that he had taken it. Robbins offered to help find the cocaine, and he said that he just wanted to go home.

That evening, Robbins briefly escaped from the house.[4] A neighbor later said that she had been awakened in the night by the sound of someone banging on her back door and asking for help. She then heard a gunshot, saw McKibbins drag a man into the street, and saw McKibbins and Earnest Lambert put the man into an SUV.[5] Two other neighbors gave similar reports, although they did not identify McKibbins specifically. Investigators eventually would find Robbins's blood in the street, as well as on a newspaper in the driveway of a neighbor.

After they put Robbins into the SUV, McKibbins and Earnest Lambert drove Robbins to a house in Riverdale. The next day, McKibbins called Green and asked him to bring food to the Riverdale house, and when Green arrived there, he found McKibbins, Raymond

---

filed a notice of appeal on July 3, 2012, and the case was docketed in this Court for the April 2013 term and submitted for decision on the briefs.

[2] It is unclear whether Robbins went to the house on Wadley Street voluntarily, but the jury might properly have inferred that he did not go voluntarily. Earlier on November 18, Robbins had gone voluntarily to another house, where McKibbins — while brandishing a firearm — had asked Robbins to come with him to some unspecified location. Both Robbins and McKibbins subsequently appeared at the house on Wadley Street.

[3] Green arrived after Robbins, having been summoned to the house by McKibbins, who asked Green if he wanted to "see about [Robbins]."

[4] McKibbins later was overheard telling Earnest Lambert that "[it] was a fatal mistake that he let [Robbins] get out [of] the window."

[5] McKibbins later contacted a mechanic and asked if the carpeting could be removed from an SUV that Earnest Lambert owned. When the mechanic replied that he could not remove the carpeting, McKibbins asked the mechanic instead to remove the engine and transmission, and he then told Green to have the SUV burned.

Lambert, and Dartantin Bailey. Green also saw Robbins, who was bloody and still in the SUV. McKibbins also summoned Shawn Sims to Riverdale, and when Sims arrived, McKibbins borrowed the keys to his car. McKibbins later returned the keys to Sims, and Sims was asked to drive his car to the home of McKibbins's sister, where McKibbins often spent the night. Sims did as he was asked, and when he arrived at the home of the sister, he heard Robbins — in the trunk of his car — yelling, "Let me out," and "I didn't take it!"

In the meantime, McKibbins told Green to obtain some plastic from Douglas Hunnicutt, and Green left Riverdale to do so. Late that evening, McKibbins called Green and directed him to report to the home of McKibbins's sister, explaining to Green that Robbins was making too much noise. After Green arrived, McKibbins retrieved plastic from Green's car, took Robbins out of the trunk of Sims's car, and led Robbins into the basement of the home. McKibbins also asked Green to go pick up "something" from Richard Otey. Soon thereafter, Green met up with Otey, and Otey handed over a chainsaw.[6] Green returned to the home of McKibbins's sister, where McKibbins took the chainsaw from him and returned to the basement of the home.

The next day, McKibbins again summoned Green to his sister's home. When Green arrived, he saw Earnest Lambert, Raymond Lambert, and John Walker putting plastic bags — which contained Robbins's dismembered body — into a garbage container. Green also saw the chainsaw in the basement, and he observed blood on the basement walls and floor. McKibbins instructed the men to clean and remove all the furniture from the basement. The men moved the furniture into a rental truck, which McKibbins provided. The men later disposed of the furniture, changed clothes, and burned their clothes, all at McKibbins's direction. Green, Bailey, and Walker then loaded the garbage container — with Robbins's dismembered body — into the rental truck, drove to Conyers, and left the garbage container in the backyard of a house that was owned by Green's ex-girlfriend. After returning the rental truck, they went back to Conyers, where they met with McKibbins early the next morning. McKibbins and Green emptied the garbage container, put the body parts into duffel bags and backpacks,[7] put the duffel bags and backpacks into a freezer, and loaded the freezer onto a second rental truck. McKibbins

---

[6] McKibbins had asked Hunnicutt for a chainsaw, as well as plastic and other supplies. Although Hunnicutt gave plastic to Green for McKibbins, he apparently referred McKibbins to Otey for a chainsaw.

[7] Bailey and Walker helped with the heaviest bag, which presumably contained Robbins's torso.

told Green, Walker, and Bailey to bury the body parts in another location, and they did so.[8]

McKibbins contends on appeal that the evidence is insufficient to sustain his convictions because the only evidence, he says, implicating him in the abduction and killing of Robbins was the uncorroborated testimony of Green, an accomplice. As we have explained before,

> [i]n Georgia, a felony conviction cannot be sustained solely by the uncorroborated testimony of an accomplice. That said, sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

*Threatt v. State*, 293 Ga. 549, 551 (1) (748 SE2d 400) (2013) (citations and punctuation omitted). See also former OCGA § 24-4-8 (in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient" and must be supported by the testimony of another witness or by "corroborating circumstances").[9] Assuming that Green was an accomplice in the abduction and killing of Robbins, we conclude that his testimony was adequately corroborated. Among other corroboration, Robbins's brother testified about McKibbins believing that Robbins had stolen his cocaine; Hunnicutt and another witness testified about the initial encounter between McKibbins and Robbins on November 18; the neighbors of the Wadley Street house — one of whom identified McKibbins specifically — testified about a man being dragged into an SUV; there was evidence that Robbins's blood was found in the street near the house on Wadley Street; the owner of the Riverdale house testified about what happened there; Sims testified about Robbins being in the trunk of his car

---

[8] The men buried most of the body parts themselves, but they saved Robbins's head, which McKibbins and the men later buried in a park. For the burial of the head, McKibbins was driven to the park by Sims.

[9] This case was tried under the old Evidence Code, see Ga. L. 2011, p. 99, § 101, and for that reason, we cite former OCGA § 24-4-8. We note, however, that the provisions of former OCGA § 24-4-8 were carried forward into the new Evidence Code and now can be found at OCGA § 24-14-8.

and being taken to the home of McKibbins's sister; the sister testified about McKibbins and the other men arriving at her home; the sister's daughter testified about a rental truck parked in the driveway of the sister's home and about the condition of the basement after the men left; there was evidence that Robbins's blood was found in the basement of the sister's home; the owner of the Conyers house testified about McKibbins and the other men bringing a garbage container to her home and obtaining a freezer from her; Sims testified about driving McKibbins to a park to bury Robbins's head; a mechanic testified about McKibbins's direction to salvage parts from the SUV; and there were letters written by McKibbins, in which he attempted to influence certain witnesses. The testimony given by Green at trial was sufficiently corroborated to sustain the convictions.

McKibbins also argues that the evidence against him was entirely circumstantial, but it failed, he says, to exclude every hypothesis other than his guilt. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Former OCGA § 24-4-6.[10] But circumstantial evidence need not exclude an unreasonable hypothesis, *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662) (1987), and as we have explained before, whether a hypothesis is a reasonable one is usually a matter for the jury. *Blevins v. State*, 291 Ga. 814, 816 (733 SE2d 744) (2012). McKibbins contends that the evidence does not exclude the hypothesis that Robbins was killed by the other men who had been with him, but the jury was not required to accept that hypothesis as a reasonable one. Moreover, the jury properly might have inferred that whatever the other men did to Robbins, they did at the direction of McKibbins. See *Brown v. State*, 291 Ga. 887, 888 (1) (732 SE2d 41) (2012) ("[Although] mere presence at the scene and approval of a crime not amounting to encouragement is insufficient to authorize a conviction as a party to a crime . . . criminal intent may be inferred from conduct before, during, and after the commission of the crime." (Citation and punctuation omitted)). In all, the evidence was sufficient to authorize a rational jury to find beyond a reasonable doubt that McKibbins was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. McKibbins complains that the indictment failed to specify — with respect to kidnapping with bodily injury — the manner in which

---

[10] We note that the provisions of former OCGA § 24-4-6 were carried forward into the new Evidence Code and now can be found at OCGA § 24-14-6.

he allegedly injured Robbins. The indictment, however, tracked the language of the kidnapping statute. And as we have explained before, "[a]n indictment which charges a defendant with the commission of a crime in the language of a valid statute [generally] is sufficient to withstand a demurrer charging that the indictment is insufficient to charge the defendant with any offense." *Stewart v. State*, 246 Ga. 70, 72 (2) (268 SE2d 906) (1980). See also *Hinton v. State*, 280 Ga. 811, 815 (3) (631 SE2d 365) (2006). Moreover, the evidence shows that Robbins's body was so dismembered and decomposed that the medical examiner was unable to definitively ascertain his injuries and cause of death. We previously have held that an indictment need not specify the injury inflicted upon the victim "when the circumstances of the case will not admit of greater certainty in stating [such injury]." *Phillips v. State*, 258 Ga. 228, 228 (1) (367 SE2d 805) (1988) (citations and punctuation omitted). The trial court did not err when it denied the demurrer.[11]

3. McKibbins also contends that the prosecuting attorney made statements in the presence of the jury that were improper and prejudicial, and in light of those statements, he says, the trial court ought to have declared a mistrial. In support of this contention, McKibbins points to three statements of the prosecuting attorney. First, in her opening statement, the prosecuting attorney remarked that "this is by far the worst case I've ever seen." Second, also in her opening statement, the prosecuting attorney said that "[y]ou could be next." Third, in closing argument, the prosecuting attorney said, "I detest [Rico] Green as much as I detest [McKibbins]." McKibbins timely objected to each of these statements and asked for a mistrial. Each time, the trial court denied a mistrial, but as to the objections to opening statement, the trial court gave a curative instruction and advised the jury that the statements of counsel are not evidence. As to the objection to closing argument, the trial court admonished the prosecuting attorney — noting that her "personal opinion [was] not proper for closing argument" — and instructed the jury to disregard the statement. Whether to declare a mistrial is a question committed to the discretion of the trial judge, and the denial of a mistrial is reversible error only if it appears that "a mistrial [was] essential to preserve the defendant's right to a fair trial." *Watson v. State*, 289 Ga. 39, 42 (7) (709 SE2d 2) (2011) (citation and punctuation omitted).

---

[11] McKibbins also complains about the way in which the indictment charged felony murder, but McKibbins was not convicted of felony murder, see note 1, supra, and for that reason, his complaint about the felony murder charge is moot. See *Braley v. State*, 276 Ga. 47, 49 (2) (572 SE2d 583) (2002).

With this standard in mind, we now consider whether a mistrial was essential to remedy any of the three statements about which McKibbins complains.

(a) As far as the remark about this case being "the worst [the prosecuting attorney had] ever seen," we agree, generally speaking, that a lawyer — and a prosecuting attorney especially — ought not offer comparisons in the presence of the jury between the case at hand and other cases with which the lawyer is personally familiar. See *Conner v. State*, 251 Ga. 113, 123 (6) (303 SE2d 266) (1983). That said, no one reasonably could dispute that this case involves especially gruesome crimes, and it appears that the prosecuting attorney was only attempting to prepare the jury for the evidence that would be forthcoming in the trial. Moreover, the issue disputed at trial did not concern the nature of the crimes — whether they were gruesome or not — but instead concerned whether McKibbins was culpable in those crimes. We confronted a similar issue in *Conklin v. State*, 254 Ga. 558 (331 SE2d 532) (1985), where we considered the remark of the prosecuting attorney in opening statement that the crime charged was "one of the most vile and brutal crimes . . . in recent memory." We held that this remark did not require a mistrial, explaining that it "was not so much an invocation of prosecutorial expertise as it was an apology for having to bring gruesome items of evidence to the jury's attention." 254 Ga. at 573 (11) (b). We also noted in *Conklin* that, in light of the undeniably gruesome nature of the evidence adduced at trial, "it [was] unlikely that prosecutorial experience or expertise played a discernible role in the jury's evaluation of the vileness and brutality of [the] crime." Id. As in *Conklin*, we conclude that the first remark about which McKibbins complains did not require a mistrial.

(b) About the statement that "[y]ou could be next," McKibbins argues that this statement amounts to an improper "Golden Rule" argument. See *McClain v. State*, 267 Ga. 378, 383 (3) (a) (477 SE2d 814) (1996) (a "Golden Rule" argument that "importunes the jury to place itself in the position of the victim for any purpose must be carefully scrutinized" (citations and punctuation omitted)). But it is important to consider the context in which the statement was made, and in light of that context, a different understanding of the statement appears. The most reasonable understanding of the statement, we conclude, was that the prosecuting attorney was commenting on the motives of McKibbins, suggesting that McKibbins — who involved many of his associates in the events that led up to Robbins's death, sometimes by asking them to undertake rather mundane tasks — was trying to send a message to his own associates that, if they stole from him, "[they] could be next." We understand the reference to

"[y]ou" to refer most naturally to McKibbins's associates, not to the jury. And so, the statement was not a "Golden Rule" argument.[12] See id. ("When an argument is ambiguous, [the Court is] reluctant to assume that the prosecutor intended [the] most damaging meaning."). Accordingly, the trial court did not abuse its discretion when it denied a mistrial as to this statement.

(c) Finally, as far as the statement in closing argument that the prosecuting attorney equally "detest[ed]" Green and McKibbins, the trial court not only sustained the objection, but it admonished the prosecuting attorney in the presence of the jury and told the jury to disregard the statement.[13] That is, "the trial court acted immediately, ruled out the offensive [statement], and properly instructed the jury to disregard the statement." *McGee v. State*, 267 Ga. 560, 565 (3) (480 SE2d 577) (1997) (holding that improper character testimony did not necessitate a mistrial because the trial judge took adequate curative action). Moreover, to the extent that McKibbins was, in fact, culpable in the abduction, killing, and dismemberment of Robbins, no one could reasonably dispute that his actions were "detest[able]." Although the prosecuting attorney ought not have shared with the jury that she "detest[ed]" McKibbins, it was not likely to surprise anyone. This is not like a case in which a prosecuting attorney explicitly asks a jury to rely upon improper considerations in reaching its verdict, see, e.g., *McClain*, 267 Ga. at 383 (3) (a), nor is it like a case in which a prosecuting attorney injects unproven and prejudicial facts in his argument. See, e.g., *Jones v. State*, 292 Ga. 656, 660-662 (2) (740 SE2d 590) (2013). In light of the considerable discretion afforded the trial court to deal with improper argument, and especially because the trial court promptly admonished the prosecuting attorney and told the jury to disregard the statement, we cannot conclude that the trial court abused its discretion when it denied a mistrial. See *Moore v. State*, 228 Ga. 662, 665 (4) (187 SE2d 277) (1972) (when "the trial court not only instruct[s] the jury not to consider such argument[s], but also rebuke[s] counsel," there generally is no abuse of discretion).

4. Next, McKibbins argues that the trial court erred when it admitted evidence of the robbery in which McKibbins and his asso-

---

[12] Our understanding of the opening statement is confirmed by the closing argument of the prosecuting attorney, in which she said that "[Earnest Lambert] is also one of [McKibbins's] 'do-boys,' which means he does, like Rico Green, what [McKibbins] tells him to do, because he knows, like the rest of the do-boys, that if he didn't do what [McKibbins] told him to do, that he could be next."

[13] Among other things, the trial judge said that "[c]ounsel's personal opinion is not proper subject for closing argument. And I have admonished her, and I will admonish her for that particular comment. You are to disregard that."

ciates stole the cocaine from a drug dealer, noting that this robbery occurred several months before the crimes with which McKibbins was charged, and yet, the State failed to give notice that it intended to offer evidence of the robbery as a similar transaction.[14] McKibbins also argues that the trial court should have instructed the jury about the purposes for which it could consider such alleged similar transaction evidence.[15] But McKibbins is wrong to characterize the evidence of the robbery as evidence of a similar transaction, and for that reason, his claims are without merit.

The evidence of the robbery was offered not as proof of a transaction similar to the crimes with which McKibbins was charged, but rather, as proof of the circumstances in which those crimes were committed. In particular, the evidence of the robbery tended to show the great lengths to which McKibbins went to procure the cocaine in the first place and to explain why McKibbins was so enraged when the cocaine turned up missing. Accordingly, the evidence went to the motive that McKibbins had for punishing the person whom he believed was responsible for the disappearance of the cocaine.[16] As we recently explained, "on the trial of one charged with murder, evidence of the defendant's motive for the homicide is always relevant." *Goodman v. State*, 293 Ga. 80, 83-84 (3) (742 SE2d 719) (2013) (citation and punctuation omitted). See also *Satterfield v. State*, 256 Ga. 593, 598 (6) (351 SE2d 625) (1987) ("Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial."). Inasmuch as the evidence of the robbery was proper evidence of motive, not a similar transaction, the trial court did not err with respect to the admission of this evidence, nor did it err in failing to charge the jury on its consideration of similar transaction evidence.

---

[14] Under Uniform Superior Court Rule 31.1, "[n]otices of the [S]tate's intention to present evidence of similar transactions or occurrences . . . shall be given and filed at least ten (10) days before trial . . . ." Uniform Superior Court Rule 31.3 (B) goes on to provide that "[t]he notice shall be in writing, served upon the defendant's counsel, and shall state the transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced."

[15] See generally *State v. Belt*, 269 Ga. 763, 765 (505 SE2d 1) (1998) ("[A]lthough a trial judge is not required in the absence of a request to give a limiting instruction when similar transaction evidence is admitted, it would be better for the trial judge to do so.").

[16] We note that motive was a disputed issue at trial, insofar as a number of McKibbins's associates were involved in the events that led up to Robbins's death. The State argued that McKibbins was the only one with a motive to kill Robbins, or at least that he had the greatest motive to kill Robbins. McKibbins, on the other hand, argued that the stolen cocaine "belonged" to Green — it had been stored, after all, in Green's car, from which it disappeared — and that Green, accordingly, had a significant motive to kill Robbins.

5. McKibbins also claims that the trial court erred when it admitted, he says, post-autopsy photographs of the dismembered victim. But of the 13 photographs about which McKibbins complains, 12 were, in fact, pre-autopsy photographs. No doubt, those photographs are gruesome, but as we have explained, "[a] photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant." *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983). And indeed, in this case, the 12 pre-autopsy photographs were relevant, insofar as they tended to show malice, corroborated and illustrated the nature and extent of the injuries that Robbins suffered, indicated that Robbins was held against his will and bound with duct tape, and corroborated the testimony that the body was so dismembered and decomposed that the medical examiner could not definitively ascertain the cause of death. We have held before that pre-autopsy photographs may be relevant to show the extent, location, and nature of the victim's wounds, see, e.g., *Felder v. State*, 273 Ga. 844, 847 (5) (545 SE2d 918) (2001), as well as to show the identity of the victim, his cause of death, and whether he was killed with malice. See, e.g., *Johnson v. State*, 289 Ga. 106, 107-108 (2) (709 SE2d 768) (2011); *Huey v. State*, 263 Ga. 840, 842 (5) (439 SE2d 656) (1994). The gruesome nature of the photographs notwithstanding, a defendant cannot complain about photographs that simply "portray the havoc wreaked by [his] own hand." *Null v. State*, 261 Ga. 180, 181 (4) (402 SE2d 721) (1991) (noting also that "murder is a gory business") (citations and punctuation omitted).

As to the remaining photograph, it was a post-autopsy photograph, but it was admitted, we conclude, for a proper purpose. As we have explained, "[a] photograph that depicts the victim after autopsy incisions . . . is admissible when necessary to show some material fact which becomes apparent only because of the autopsy." *Norton v. State*, 293 Ga. 332, 335 (3) (745 SE2d 630) (2013) (citations and punctuation omitted). In this case, the post-autopsy photograph of the victim depicted his head underneath his scalp, and it was necessary to show an injury — cerebral bruising caused by trauma to the head — that was apparent only upon autopsy. This evidence corroborated testimony that Robbins was beaten before his death, and it was the only injury suffered by Robbins prior to his death that the medical examiner was able to identify. Consequently, the trial court did not abuse its discretion when it admitted a single, post-autopsy photograph. See *Stewart v. State*, 286 Ga. 669, 670 (3) (690

SE2d 811) (2010) ("The admission of photographic evidence is at the discretion of the trial court." (Citations omitted)).

6. In addition, McKibbins argues that the trial court erred when it allowed two letters — which he allegedly wrote in an attempt to influence witnesses — to go out with the jury during its deliberations. As a general rule, testimonial documentary evidence — such as affidavits, depositions, written confessions, statements, and dying declarations — should not be permitted in the jury room. See *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009). But when there is "original documentary evidence of [the defendant's] attempt to influence witnesses," such evidence may go out with the jury. *Bollinger v. State*, 272 Ga. App. 688, 692 (2) (613 SE2d 209) (2005). The letters in this case were "original documentary evidence of [an] attempt to influence witnesses," and the trial court did not err in permitting the jury to have the letters during its deliberations.

7. Finally, McKibbins claims that the trial court erred when it failed to define "accomplice" in its jury charge. With respect to the corroboration required of accomplice testimony, the trial court instructed, in pertinent part:

> The testimony of a single witness, if believed, is generally sufficient to establish a fact. An exception to this rule is made in the case of a felony, where the witness is an accomplice. The testimony of . . . the accomplice alone is not sufficient to warrant a conviction. The accomplice's testimony must be supported by other evidence of some type, and that evidence must be such as would leave the inference of guilt of the accused, independent of the testimony of the accomplice. . . . Whether or not any witness in this case was an accomplice is a question for you to determine from the evidence in this case.

We begin by noting that McKibbins failed at trial to object to this charge, and for that reason, our review is limited to a review for plain error. See OCGA § 17-8-58 (b). See also *State v. Kelly*, 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011). We see no plain error here.

In the first place, McKibbins points to no decision in which this Court or our Court of Appeals has found that a trial court erred by failing to define "accomplice" in connection with such a charge. Second, the charge given by the trial court was substantially identical to the pattern charge on accomplice testimony, which also does not define accomplice. See Suggested Pattern Jury Instructions, Vol. II:

Criminal Cases, §§ 1.31.90 – 1.31.94 (3rd ed. 2003).[17] See also *Terrell v. State*, 271 Ga. 783, 786 (4) (523 SE2d 294) (1999) (holding that complaint about jury charge on corroboration of accomplice testimony was without merit where "[t]he record shows that the charge given was virtually identical to the charge on accomplice testimony corroboration contained in the pattern jury instructions").[18] Most important, it is settled that a "trial court is not required to instruct on the meaning of all words used in the charge, particularly words of common understanding." *Smith v. State*, 209 Ga. App. 540, 543 (5) (433 SE2d 694) (1993) (citation omitted). See also *Smith v. State*, 249 Ga. 228, 229 (2) (290 SE2d 43) (1982) (because "mitigation" is a "word of common meaning," it was "not error to fail to define it" in the jury charge). "Accomplice," as used in the charge of the trial court, is a word that is commonly used and understood by persons other than lawyers, and we think that the jury likely could understand it in this case without explicit definition. Accordingly, the charge of the trial court did not involve a clear departure from a settled legal rule, and the charge was not, therefore, plain error. See *Kelly*, 290 Ga. at 33 (2) (a).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 2013.

*Cynthia W. Harrison*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Sheila E. Gallow, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General*, for appellee.

---

[17] Since McKibbins was tried, a new edition of the Suggested Pattern Jury Instructions has been published, but it too does not define "accomplice" in connection with the charge on accomplice testimony. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, §§ 1.31.90 – 1.31.94 (4th ed. 2007, updated through January 2013).

[18] There are cases, of course, in which the appellate courts have concluded that the pattern charges are legally incomplete or incorrect. See, e.g., *Clark v. Rush*, 312 Ga. App. 333, 336-337 (2) (718 SE2d 555) (2011). But when we are reviewing for plain error only – when no one has objected to the charge – reliance on a pattern charge may prove important, especially where no case law suggests that the charge is incomplete or incorrect.