A02A2379. CHAMPION v. THE STATE.
(579 SE2d 35)

MILLER, Judge.

Carrie Lorraine Champion was indicted on 53 counts of theft by taking money from her former employer Carpet Capital Floor Covering, Inc. A jury found her guilty on three of the counts. Following the denial of her motion for new trial, Champion appeals, challenging the sufficiency of the evidence, and the denial of her motion to dismiss based on lost exculpatory evidence. We discern no error and affirm.

1. Champion first argues that the circumstantial evidence against her was insufficient to sustain the convictions. On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and Champion no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. Id.; see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence showed that Champion was an accountant for Carpet Capital from 1992 to 1996. She handled the accounts payable, accounts receivable, and all cash for the company's in-store sales. Champion was responsible for collecting invoices issued to Carpet Capital's salespeople. The salespeople would turn in their daily invoices along with the payments, and Champion would tabulate the

payments (normally composed of cash and checks) and prepare them for deposit, sometimes with the aid of another employee whom Champion supervised. When it was announced that Carpet Capital would merge with another company, Champion notified the owner of Carpet Capital that she would be resigning. The owner became suspicious when he had difficulty getting certain company information from Champion just prior to her leaving the company. Upon conducting his own evaluation of the company's profits, he discovered a shortfall of $192,000. Suspecting theft, Carpet Capital contacted law enforcement officials. The Georgia Bureau of Investigation conducted an investigation into the company's financial records. A forensic auditor from the GBI testified that she reviewed the amount of cash that should have been deposited by Carpet Capital, and during her audit covering records dated January 1992 to October 1996, she discovered that $209,549.16 in company funds was missing.

Under OCGA § 16-8-2, "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."

Count 51 alleged that between February 21 and February 25, 1994, Champion appropriated $999.51 belonging to Carpet Capital. The evidence showed that a deposit ticket dated February 21, 1994, included several checks payable to Carpet Capital and $999.51 in cash. This deposit ticket was attached to the corresponding invoices. However, the deposit ticket that was actually processed through the company's bank included the same checks but no cash.

Count 52 alleged that between February 22 and February 23, 1996, Champion appropriated $1,399.22 belonging to Carpet Capital to her own use. On the first deposit ticket dated February 22, 1996, there were several checks listed and a cash amount of $1,399.22. There was also a second deposit ticket dated February 15, 1996, listing a different group of checks that was to be deposited, filled out in Champion's handwriting. The deposit ticket that was actually deposited with the bank, however, combined both sets of checks from the other two deposit tickets but listed no cash and was also in Champion's handwriting. This deposit was transacted on February 23, 1996. The auditor testified that she could not find where the $1,399.22 in cash was deposited.

Count 53 alleged that Champion on May 21, 1996, appropriated $2,704.34 belonging to Carpet Capital to her own use. The auditor testified that in her first audit of the company's financial records, she discovered a deposit slip for May 21, 1996, that listed the total amount to be deposited as $41,873.14 with no cash listed (only checks), and that she discovered an adding machine printout

attached to a copy of a check, also dated May 21, listing $2,704.34 in cash with notations in Champion's handwriting. She further testified that although the deposit ticket that was previously attached to the corresponding invoices was not available, the record reflects that two deposits were made on May 21, 1996. One for $41,873.14 listed no cash, and another for $14,239.28 listed $755.65 in cash. On neither ticket was $2,704.34 in cash deposited.

"This case involves a crime of deception and abuse of trust. The evidence presented is circumstantial by necessity." *Urness v. State*, 251 Ga. App. 401, 403 (2) (554 SE2d 546) (2001). The State presented evidence showing a pattern of manipulation of deposit records prepared by Champion as well as evidence of missing cash while she was responsible for collecting cash for invoices and preparing and making company deposits. See id.

> The evidence was all circumstantial. If separated, and divided into segments, no one segment would be sufficient to convict. But when added together, as a whole it is sufficient to warrant a conviction, and it excludes every other reasonable hypothesis save that of guilt of the accused. In such cases it is not necessary that the circumstances remove every possibility of the defendant's innocence.

(Footnote omitted.) Id.

Although Champion testified that some of the cash was used for other company expenses, conflicts in testimony are a matter for the jury to resolve. See *Johnson v. State*, 255 Ga. App. 537, 538 (566 SE2d 349) (2002). The evidence sufficed to sustain the convictions.

2. Champion argues that the court erred in denying her motion to dismiss based on lost exculpatory evidence. "When evidence is lost, a conviction must be reversed on a showing of bad faith or connivance on the part of the government, or a showing that the defendant was prejudiced by the loss of evidence." (Citation omitted.) *Burson v. State*, 183 Ga. App. 647, 649 (4) (359 SE2d 731) (1987). In her motion to dismiss, Champion claimed that the State lost or allowed the disappearance of evidence by leaving it in an unsecured location. This, however, is not necessarily a showing of bad faith or connivance on the part of the State, and Champion has not otherwise made the requisite showing. See id. "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (Punctuation and footnote omitted.) *Jones v. State*, 258 Ga. App. 283, 284 (574 SE2d 359) (2002). Champion has also failed to show how she was prejudiced by the loss of such evidence. Although she argued that the evidence would have shown that certain expenses were paid in cash

and thereby explained the missing money, "[t]o be material, the evidence must have had an apparent exculpatory value before it was lost, *and* be of such a nature that the defendant cannot obtain comparable evidence by other reasonable means." (Footnote omitted; emphasis supplied.) Id. at 284-285. Champion has not shown that the missing information met this test. See id. Thus, the trial court did not clearly err in denying the motion to dismiss on this ground.

*Judgment affirmed. Johnson, P. J., and Blackburn, P. J., concur.*

DECIDED FEBRUARY 13, 2003 —
RECONSIDERATION DENIED FEBRUARY 27, 2003 — 

*Christopher J. McFadden*, for appellant.

*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.