## S09A1123. POPE v. THE STATE.

(685 SE2d 272)

BENHAM, Justice.

Jomekia Dechelle Pope has been charged with malice murder, felony murder, and arson in connection with the death of Latosha Taylor, and the State has given notice of its intent to seek the death penalty. We granted Pope's application for interim review and directed the parties to address the following three questions:

> Did the trial court err in quashing count two of Pope's current indictment? Is any such error cured under the right for any reason principle? See *State v. Layman*, 279 Ga. 340, 340-341 (613 SE2d 639) (2005).

> Did the trial court err in ordering a psychological examination of Pope over his objection? Will any such error be rendered reliably harmless under the terms of the trial court's order provisionally sealing the report from that examination?

> Did the trial court err in addressing what hearsay testimony, including the statements by the alleged victim to a police officer and affidavits by the alleged victim, would be admissible at trial in support of the State's argument that Pope and the alleged victim had a history of prior difficulties?

For the reasons set forth below, we reverse the trial court's order quashing Count 2 of Pope's indictment, we conclude that the trial court erred by ordering Pope to undergo a psychological examination and direct the trial court to maintain the report from that examination under seal unless Pope gives notice of his intent to present expert mental health testimony at trial, and we find no error but caution the trial court regarding the hearsay statements of the alleged victim.

1. On Pope's motion, the trial court quashed Count 2 of Pope's indictment, which alleges felony murder predicated on the felony of aggravated battery. That count states as follows:

> FELONY MURDER (O.C.G.A. § 16-5-1C)
>
> For that the said accused . . . while in the commission of the felony of Aggravated Battery did maliciously cause bodily harm to Latosha Taylor by dousing her with gasoline and setting her on fire, which seriously disfigured her body and caused the death of Latosha Taylor. . . .

In quashing this felony murder count, the trial court stated that the indictment alleges "that the defendant maliciously committed aggravated battery (and since aggravated battery also has malice as an element) the indictment effectively alleges that the defendant *maliciously* committed an act of *malice*." The trial court reasoned that the State had improperly alleged "malicious malice," which it found to be "simply not a phrase that can be tested at trial." We conclude that this finding was erroneous. The felony murder count alleges that the causing of bodily harm was malicious, not that the commission of the complete crime of aggravated battery was malicious.

The trial court also found fault with the felony murder count because it is predicated on the felony of aggravated battery. The trial court stated as follows:

> [S]pecial problems seem to arise when both malice and felony murder are alleged as alternative and separate counts only because in this case there is no difference in what has to be proved between the malice murder alleged and felony murder alleged in separate counts. This is because the felony murder predicate includes malice as an element. It seems to this Court and the Court hereby rules that Count Two is in actuality merely another allegation of malice murder couched in felony murder language.

This reasoning is also erroneous. There is an important difference between the "malice" required for malice murder and the "malice"

required for aggravated battery. The former is "the unlawful intention to *kill* without justification, excuse, or mitigation." (Emphasis supplied.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3d ed.), p. 53, § 2.03.10. The latter is "an actual intent to cause the particular *harm* produced (that is, bodily harm) without justification or excuse." (Emphasis supplied.) Id. at p. 83, § 2.05.51. A defendant might have had malice in the form of the intent to cause *bodily harm* with no malice in the form of the intent to *kill*, and yet death might still occur; in such a case the defendant would be guilty of felony murder but not malice murder. Accordingly, we hold that the indictment does not allege malice murder twice but, instead, properly charges malice murder and felony murder as distinct, alternative counts.

2. The trial court repeatedly inquired of defense counsel if they anticipated presenting expert mental health testimony at trial, and trial counsel repeatedly responded that they had no present intention of doing so, that they were continuing to investigate the case, and that they would inform the trial court if and when they made a decision to seek a mental health examination of Pope. The trial court stressed that any such notice by the defense should be timely; however, the issue that became the driving concern of the trial court over the course of the various pre-trial hearings was whether defense counsel might forgo a mental health examination of Pope only to have a claim that he is mentally retarded raised later in habeas corpus proceedings.

Over the objection of the defendant, the trial court ordered Pope evaluated for competency to stand trial and mental retardation. The final written order for the examination indicated that a copy of the report would be provided to the State once the defense attorneys were able to review it and advise the trial court if they found anything making "reference to any facts regarding the underlying case." In a hearing held on June 26, 2008, the issue of the psychological examination was discussed for the last time. In that hearing, the State indicated that it had instructed Central State Hospital not to provide the State a copy of the report from the examination and that the State had never seen the report. The trial court indicated that it also had not yet seen the report. The defense then made a copy of the report and provided it to the trial court. We ordered this issue addressed on interim review because our review of the record provided us no assurance that the State would not eventually receive a copy of the report.

This Court has held that a defendant must submit to a mental health examination by the State's expert if he or she intends to present expert mental health testimony at trial. See *Nance v. State*, 272 Ga. 217 (2) (526 SE2d 560) (2000). This rule "seeks a fair

4

balance between the interests of the State, the regard for the function of the courts to ascertain the truth, and the scope of a defendant's privilege against self-incrimination," and we have likened the rule to the practice of requiring a defendant who chooses to testify at trial to submit to cross-examination. Id. However, we have also stated as follows:

> We have taken pains to ensure that the extent to which a defendant must waive his constitutionally-protected right to remain silent is no greater than is necessary to serve the purpose mandating the waiver: "to permit the State to formulate a response or rebuttal to the testimony of the defendant's mental health expert."

*State v. Johnson*, 276 Ga. 78, 79 (2) (576 SE2d 831) (2003) (quoting *Nance*, 272 Ga. at 219-220). It is true that a trial court has a duty to

> conduct, sua sponte, a competency hearing when there is information which becomes known to it, prior to or at the time of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence.

*Traylor v. State*, 280 Ga. 400, 404 (4) (a) (627 SE2d 594) (2006). However, the trial court in Pope's case has indicated that it has seen no reason to doubt Pope's competence. The State argues that the nature of the alleged crimes and the fact that Pope had a previous mental examination in Minnesota in connection with a domestic abuse case justify the trial court's ordering a mental examination; however, these items do not suggest any issue regarding Pope's competence. We think that the record is clear that the trial court ordered a mental examination of Pope not because of concerns over his competence but, instead, solely for the purpose of ensuring that claims regarding mental health are not eventually raised on habeas corpus.

Although the trial court's motivation is understandable, its actions disregard the adversarial process upon which our criminal justice system is founded. Pope has well-qualified defense counsel, and the trial court should not intrude into Pope's defense preparations absent some indication that Pope is incompetent or that trial counsel is acting unethically. Accordingly, we conclude that the trial court erred by unjustifiably ordering Pope to undergo a psychological examination.

We directed the parties to address whether the portion of the trial court's order provisionally sealing the examination report rendered harmless its decision to order Pope's examination over his

objection. Pope argues that his ability to forge a defense has already been harmed by his being subjected to the examination. We disagree. If Pope were to elect to present testimony from his own mental health expert, he would be required to submit to an examination like the one he has already had. If he were to elect not to present such testimony, he could not be harmed by the examination that has been done, provided it remains under seal. Although the parties agree that the report should remain under seal unless Pope elects to present his own mental health testimony, the trial court's most recent order on the matter prescribes a process that eventually would result in the "release of the copies of said evaluation to the State." In light of the foregoing discussion, we disapprove this language and direct the trial court to keep the report under seal unless Pope gives notice to the trial court that he intends to present his own expert mental health testimony at trial.

3. In its order addressing evidence of prior difficulties between Pope and the victim, the trial court acknowledged that statements by the alleged victim to a police officer complaining of an alleged attack by Pope were hearsay. The trial court ruled that these hearsay statements would be admitted at trial if the State could demonstrate that an exception to the hearsay rule applied. However, as we have held and the parties do not dispute, statements alleging that a criminal act has been committed that are made in response to a police officer's questions during a time when there is no longer an ongoing emergency are testimonial in nature, and it is a violation of the Confrontation Clause of the Sixth Amendment to admit hearsay accounts of them over a defendant's objection where the defendant has had no previous opportunity for cross-examination. *Wright v. State*, 285 Ga. 57 (3) (a) (673 SE2d 249) (2009) (addressing hearsay testimony by an officer recounting the statements of a domestic abuse victim). Thus, the statements that the alleged victim made to the police officer are inadmissible if objected to by Pope. Similarly, the affidavit testimony the alleged victim gave in connection with her judicial complaint of domestic abuse is also hearsay, is testimonial in nature, and is inadmissible if objected to by Pope.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED OCTOBER 19, 2009.

*Dennis C. Francis, Jr., Gerald P. Word*, for appellant.
*Howard Z. Simms, District Attorney, Dorothy V. Hull, Pamela Y. White-Colbert, Gregory W. Winters, Assistant District Attorneys*,

*Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General*, for appellee.