S11A0390. JOHNSON v. THE STATE.

(709 SE2d 768)

CARLEY, Presiding Justice.

A jury found David Rontell Johnson guilty of the malice murder of Andrew Howard. The trial court entered judgment of conviction

on the guilty verdict and sentenced Johnson to life imprisonment. A motion for new trial was denied, and Johnson appeals.* His co-defendant Ontario Williams was convicted of malice murder and obstruction by giving false information, and those convictions were affirmed on appeal. *Williams v. State*, 284 Ga. 94 (663 SE2d 179) (2008).

1. Construed most strongly in support of the verdict, the evidence, including eyewitness testimony, shows that, after Williams stated that he was going to shoot the victim over a $10 debt out of "principle," Williams, Johnson, and another man went to the victim's home, where Williams was belligerent and appeared to be holding something behind his back. The three men went to a nearby park, and the victim subsequently went there as well after learning of the visit to his home. Johnson confronted several people in the park, told them that something was about to go down, and warned them not to tell anyone. He then confronted the victim and argued loudly with him. The victim was fatally shot twice in the head from close range. Johnson and Williams fled the scene. While in jail, Johnson admitted to another inmate that he killed somebody. Although there was conflicting evidence as to whether Johnson or Williams was the shooter, the evidence was more than sufficient to authorize a rational trier of fact to find Johnson guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Williams v. State*, supra at 95-96 (1).

2. Johnson contends that the trial court erred by denying a motion in limine to exclude eight autopsy photographs of the victim's head.

"The admission of photographic evidence is at the discretion of the trial court. [Cits.]" *Stewart v. State*, 286 Ga. 669, 670 (3) (690 SE2d 811) (2010). Johnson argues that the forensic pathologist could have verbally described the wounds and, if necessary, used a diagram or model. However, "we recognize that photographs are inherently more persuasive regarding the existence of the things they depict than testimony regarding those same things." *Stinski v. State*, 281 Ga. 783, 786 (3) (642 SE2d 1) (2007). Furthermore, " '[p]re-incision photos such as the ones currently at issue which depict the location

---

* The murder occurred on September 28, 2005, and the grand jury returned an indictment on December 28, 2005. The jury found Johnson guilty on November 3, 2006, and the trial court entered the judgment of conviction and sentence on November 7, 2006. The motion for new trial was filed on November 20, 2006, amended on September 19, 2007 and May 11, 2009, and denied on August 10, 2010. Johnson filed the notice of appeal on September 7, 2010. The case was docketed in this Court for the January 2011 term and submitted for decision on the briefs.

and nature of the victim's wounds are admissible because they are relevant and material.' [Cit.]" *Banks v. State*, 281 Ga. 678, 680 (2) (642 SE2d 679) (2007). See also *Roberts v. State*, 282 Ga. 548, 552 (9) (651 SE2d 689) (2007). Indeed, " 'they are admissible even if they are duplicative and may inflame the jury. [Cit.] . . . This is not altered by the fact that the cause of death may not be in dispute.' [Cit.]" *Roberts v. State*, supra. The photographs were relevant to the issue of whether the State proved that the shooting of the victim twice in the head was caused by Johnson with malice aforethought. *Bradley v. State*, 281 Ga. 173, 174 (2) (637 SE2d 19) (2006). Moreover, some "of the photographs showed gunpowder stippling on the victim['s] skin. . . . Each of the photographs was relevant to some point of the forensic pathologist's testimony. [Cit.]" *Conway v. State*, 281 Ga. 685, 691 (5) (642 SE2d 673) (2007).

None of the photographs shows any changes in the state of the body by authorities or the pathologist sufficient to bring this case within the stricter rule of admissibility announced in *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983). Shaving of the victim's hair around the wounds "cannot be equated with post-mortem surgical procedures." *Bell v. State*, 257 Ga. 560, 561 (3) (361 SE2d 488) (1987). See also *Stewart v. State*, supra at 671 (3); *Brown v. State*, 270 Ga. 601, 604 (6) (512 SE2d 260) (1999). "The mere fact that metal probes could be seen in some of the photographs did not render them inadmissible. The probes simply illustrated the angle and path of the victim's wounds." *Williams v. State*, 265 Ga. 681, 683 (5) (461 SE2d 530) (1995). The trial court did not abuse its discretion in admitting the pre-incision autopsy photographs into evidence.

3. Over objection, the trial court allowed the prosecutor to play the entire tape of an out-of-court police interview of a witness for the State. Johnson urges that particular statements made during that interview which were inculpatory of Johnson were inadmissible as prior inconsistent statements because the witness had admitted making them, but testified that he lied to the police. "However, 'the fact that the witness admits that he or she made the inconsistent pre-trial statement does not render it inadmissible. (Cit.)' [Cits.]" *Wilson v. State*, 286 Ga. 141, 142 (2) (686 SE2d 104) (2009). See also *Warner v. State*, 281 Ga. 763, 766 (3) (642 SE2d 821) (2007); *Duckworth v. State*, 268 Ga. 566, 568-569 (1) (492 SE2d 201) (1997). We have rejected the assertion that "a prior inconsistent statement is admissible only if the witness denies making the prior statement, but not if he simply disputes the truth of the earlier statement. There is no such 'denial' requirement under [OCGA § 24-9-83]." *Cummings v. State*, 280 Ga. 831, 833 (3) (632 SE2d 152) (2006).

4. Several witnesses testified that, on the night of the crime, Johnson was wearing a white baseball cap with the letters "SAV."

Johnson's cousin testified that Johnson later gave him the cap. The cousin gave the cap to a detective, who placed it on a desk in the homicide office, photographed it from several angles, and never saw it again. Johnson complains that the trial court erred by admitting into evidence photographs of the cap even though its loss deprived the defense of the opportunity to inspect and examine the actual cap.

> "In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988). To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984)." [Cits.]

*Krause v. State*, 286 Ga. 745, 752 (8) (691 SE2d 211) (2010).

> With regard to materiality, "the fact that evidence may be 'potentially useful' in a defendant's attempt at exoneration is insufficient to sustain a claim that the defendant has suffered an abridgment of due process of law due to the destruction or loss of the evidence. The key is the 'apparent exculpatory value' of the evidence prior to its destruction or loss and 'apparent' in this context has been defined as 'readily seen; visible; readily understood or perceived; evident; obvious.' " [Cit.]

*State v. Mizell*, 288 Ga. 474, 476 (2) (705 SE2d 154) (2010). See also *State v. Miller*, 287 Ga. 748, 754 (699 SE2d 316) (2010).

Johnson argues that the loss of the cap prevented examination thereof for hair fiber, DNA, gunshot residue, or blood spatter and made it impossible to discredit testimony concerning ownership or possession of the cap. However, such potential usefulness "does not establish that the [cap] had an 'obvious' or 'readily perceived' *exculpatory* value. [Cit.] As far as the State knew at the time the [cap] disappeared, and indeed as far as we know today, the [cap was] more likely to be *inculpatory*" of Johnson. (Emphasis in original.) *State v. Mizell*, supra. "There was no apparent reason for the police to think that the [cap] would tend to exonerate rather than further inculpate [Johnson]." *Krause v. State*, supra. There was no testimony that

anyone other than Johnson wore the cap, nor was there any testimony as to what gunshot residue or blood spatter, if any, one would expect to find on the perpetrator's cap, given the particular range of fire which was proven. Under all of the circumstances, any "contention that testing of the [cap] *would have,* as opposed to theoretically *could have,* supported [Johnson's] defense that [someone else] committed the crimes was pure speculation." *State v. Mizell,* supra. Therefore, the lost cap was not constitutionally material.

Moreover, even if the cap was constitutionally material, " 'the failure to preserve this potentially useful evidence does not violate due process *unless a criminal defendant can show bad faith on the part of the police.*' [Cit.]" (Emphasis in original.) *Lockheart v. State,* 284 Ga. 78, 79 (2) (663 SE2d 213) (2008). In this case,

> there is no evidence that the State acted in bad faith. "Even if we were to assume that the State's 'handling of the [cap] (indicated) careless, shoddy and unprofessional investigatory procedures, (it did) not indicate that the police in bad faith attempted to deny [Johnson] access to evidence that they knew would be exculpatory.' (Cit.)" [Cit.]

*Davis v. State,* 285 Ga. 343, 349 (9) (676 SE2d 215) (2009). See also *Champion v. State,* 260 Ga. App. 12, 14 (2) (579 SE2d 35) (2003).

Accordingly, Johnson's due process rights were not violated, and the ground on which he sought to exclude photographs of the baseball cap is without merit.

5. Johnson further contends that the trial court erred in charging the jury on prior consistent statements when no out-of-court statements were admitted as such.

Even assuming that Johnson is correct that no evidence was admitted as prior consistent statements, the trial court was merely telling the jurors a legal truism, as they may consider all of the words they hear as substantive evidence, unless the trial court tells them to disregard those words or cautions that the testimony is admitted only for a limited purpose. *Boyt v. State,* 286 Ga. App. 460, 466-467 (3) (649 SE2d 589) (2007). See also *Burns v. State,* 166 Ga. App. 766, 767 (2) (305 SE2d 398) (1983).

> Thus, the challenged instruction could not have had any effect on the proceedings, even if, as noted in *Boyt,* "(t)he better practice would be to give no charge at all on prior consistent statements and leave that matter to the arguments of counsel." [Cit.] Here the court's instructions,

taken as a whole, would not mislead a jury of average intelligence.

*Smith v. State*, 291 Ga. App. 389, 391 (2) (662 SE2d 201) (2008). Moreover, although Johnson argues that the State asked a number of witnesses about what they had told the police, the trial court did not specifically refer to any such testimony, and its general charge on prior consistent statements did not constitute a comment on the evidence. See *Boyt v. State*, supra at 468 (3). Accordingly, we find no reversible error.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 18, 2011.

*Steven L. Sparger*, for appellant.

*Larry Chisholm, District Attorney, Jerome M. Rothschild, Jr., Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.

