**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: May 29, 2024

S24A0478.  BAKER v. THE STATE.

PETERSON, Presiding Justice.

Kenneth Lee Baker appeals his convictions for malice murder and possession of a firearm during the commission of a crime for the fatal shootings of his wife, Lynnale Baker, and stepdaughter, Shaelinda Sanders.[1] He argues that the evidence was insufficient to

---

[1] The victims were found dead on May 17, 2010. On February 8, 2011, a Spalding County grand jury returned an indictment charging Baker with two counts of malice murder, two counts of felony murder, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. At a trial that took place in September 2011, a jury found Baker guilty on all charges except the felon-in-possession charge, which was not submitted to the jury. On the State's motion, the trial court then entered an order of nolle prosequi of the felon-in-possession charge. On September 14, 2011, the trial court imposed four consecutive life-without-parole sentences for the malice murder and felony murder counts, along with a consecutive five-year sentence for possession of a firearm during the commission of a crime. A consent order entered on September 27, 2011, amended that sentence to state that the felony murder counts "merged" into the malice murder counts "[b]y operation of law"; a final disposition form filed in 2022 properly described the felony murder counts as "vacated" and imposed two consecutive life sentences with the possibility of parole for the malice murder counts, along with a consecutive

support his conviction, that the trial court plainly erred by failing to give a jury charge on impeachment for bias, and that the trial court abused its discretion by admitting into evidence certain autopsy photos and a notebook found in his truck. We conclude that the evidence was sufficient both as a matter of constitutional due process and Georgia statutory law, that the trial court did not plainly err in failing to give an instruction on impeachment for bias, and that the trial court did not abuse its discretion in admitting the photos and notebook. We affirm.

1.    Baker argues that the evidence was insufficient to support his convictions, both as a matter of federal due process and

---

five-year sentence for possession of a firearm during the commission of a crime. On September 14, 2011, trial counsel filed a motion for new trial, which was amended by new counsel on December 15, 2021. On September 29, 2022, following a hearing, the trial court entered an order denying the motion for new trial. Motion-for-new-trial counsel filed a notice of appeal to the Court of Appeals on October 28, 2022.  The Court of Appeals transferred the case to this Court on April 11, 2023.  On June 2, 2023, this Court remanded the case to the trial court for consideration of whether motion-for-new-trial counsel should be permitted or required to withdraw given a concern about his current licensure status due to noncompliance with continuing education requirements.  Baker was assigned new appellate counsel on remand. New appellate counsel filed an amended notice of appeal on October 13, 2023. The case was docketed to this Court's April 2024 term and submitted for a decision on the briefs.

Georgia statutory law. We disagree.

When evaluating the legal sufficiency of evidence, we view the evidence in the light most favorable to the verdicts and inquire whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Mims v. State*, 304 Ga. 851, 853 (1) (a) (823 SE2d 325) (2019) (citation and punctuation omitted).

Applying this standard, the evidence presented at trial showed the following. In the spring of 2010, Baker and Lynnale were in the process of getting divorced. They were living in Griffin in Spalding County with Shaelinda, who was a high school senior, and their middle-school-aged son, K.B. A separation agreement provided that Lynnale was to be awarded the house in the divorce.

K.B. testified that on May 16, 2010, he and his mother had

spent the night at his aunt's home in College Park. At 5:39 a.m. on May 17, 2010, Lynnale sent Baker's cell phone a sexually suggestive text message, apparently intended for someone else. Lynnale dropped K.B. off at school and proceeded to the Griffin residence to see Shaelinda, according to K.B. Lynnale's phone called Baker's phone around 9:00 a.m., and records show the call lasted two minutes and twenty-one seconds.

Phone records showed that at 11:16 a.m., Baker's cell phone, pinging off a cell tower in Tallapoosa, attempted a call to the phone of Baker's father, Randolph Young. Records showed that, twelve minutes later, Young's phone received a call of six minutes and thirty-one seconds in duration from a pay phone located in Tallapoosa, which is about two hours from Griffin. According to Young's testimony, Baker called around 11:00 a.m. or 11:15 a.m. and said he "had shot Lynnale and the girl" and was "going to kill himself." Young testified that Baker asked Young to pick K.B. up from school. Young testified that he had never been to Baker's house and they had little in common.

In response to a call from Young, law enforcement proceeded to the Griffin residence, which was locked and showed no sign of forced entry. There they found both Lynnale and Shaelinda inside a locked bedroom, shot to death. Baker was suspected of the crimes, and law enforcement placed lookouts on him and his vehicle.

In late July 2010, Andre Adams saw Baker on the America's Most Wanted television show and recalled seeing Baker's "black truck with a Georgia tag on it" at a park in Shreveport, Louisiana on July 27, 2010. Adams returned to the park on August 3, 2010, saw Baker and his truck, and called 911. Adams testified that he overheard Baker mumbling, "I messed my life up; I shouldn't have . . . done that." Baker was arrested at the park that day in a Mazda pickup truck. He volunteered to an arresting officer that there was not a gun in his truck. He asked an officer to check on his son and expressed concerns over whether K.B. "was strong enough to handle what he knew."

Pursuant to a consent-to-search form signed by Baker, law enforcement searched Baker's truck and found divorce papers and a

notebook. The first page in the notebook began with the statement, "My name is Kenneth Lee Baker," and included Baker's address and names and some contact information for various people, including Baker's father and children. The notebook included apologies and requests for forgiveness and statements indicating the writer no longer wished to live, but did not clearly reference Lynnale, Shaelinda, or any shootings or murders. Referencing K.B., the writer said, "My father has temp custody of him for now." The notebook included a list of assets, including a "1995 Mazda Pickup." One page included the words, "Kenneth Baker last will" and another the words, "I don't want to live anymore I am sorry for all that I have done. Kenny Baker 8-3-10 No more pain."

Testifying in his own defense at trial, Baker said that he spent the night before the shootings at the Griffin residence with Shaelinda, but was not present for the shootings. He testified that he could not remember where he went after he left the house that morning. Baker said he spoke to Lynnale on the telephone on the morning of the shootings and he understood that she was going to

Griffin. Baker also said he spoke to K.B. around 8:00 a.m. or 8:30 a.m. that morning and K.B. had not been dropped off at school. Baker said he was not sure whether he called Young the morning of the shootings, testifying that his phone had been broken. Baker claimed that he did not have any relationship with Young, they did not get along at all, and that previous attempts for Baker to live with Young had failed, including after Baker had been released from a previous incarceration for his assault on the mother of one of his children. Baker testified that Young hated Baker "so much that he got up [t]here and lied" to the jury about Baker calling that day.

Applying the *Jackson v. Virginia* constitutional sufficiency standard cited above, we conclude that the evidence admitted at trial was sufficient to authorize the jury's verdict on the malice murder counts. Baker argues essentially that the State did not prove that he was the person who shot his wife and stepdaughter. But among other evidence, the State presented evidence that Baker confessed to Young that he had shot Lynnale and Shaelinda and asked Young to pick up K.B. from school, prompting Young to call

7

the police. The scene encountered by law enforcement, who conducted a welfare check at Baker's home, showed that Lynnale and Shaelinda had in fact been shot.

The record also contains various pieces of evidence of Baker's consciousness of guilt, including his departure from the Griffin area in the wake of the violent deaths of his wife and stepdaughter, remarks by Baker in a notebook found in his truck in which he offered general apologies and said that he did "not want to live anymore[,]" and the testimony by the tipster in Shreveport regarding Baker's statements that he had "messed [his] life up" and "shouldn't have . . . done that." See *Renner v. State*, 260 Ga. 515, 517 (3) (a) (397 SE2d 683) (1990) (evidence authorized a finding by the jury that defendant's departure from the state following death of victim "was occasioned by a consciousness of guilt"); see also *Bostic v. State*, 294 Ga. 845, 848 (2) (757 SE2d 59) (2014) (testimony of fellow inmate of defendant regarding statements by defendant that showed consciousness of guilt was admissible as admissions of a party opponent).

Baker claims that he had an alibi — that he had left his home and was driving "toward I-20" on his way to Louisiana on the morning of the shootings — and relies almost exclusively on his own testimony in support. But Baker professed a lack of recollection as to some of his actions on the morning of the shooting; that testimony may itself support an inference of guilt if it were disbelieved by the jury, given the other evidence of Baker's guilt. See *Mims v. State*, 310 Ga. 853, 855 (854 SE2d 742) (2021) (defendant's testimony "may itself be considered substantive evidence of guilt when disbelieved by the jury, as long as some corroborative evidence exists for the charged offense"). To the extent Baker relies on cell phone records showing that he was driving on I-20 near Tallapoosa before his signal was lost, the relevant evidence showed that police began tracking Baker's location *after* the shootings in hopes of locating him. Baker points to no evidence excluding the possibility that he was at the Griffin home at the time of the shootings.

Baker also appears to argue that the evidence was insufficient as a matter of Georgia statutory law. He cites OCGA § 24-8-823,

9

arguing that his alleged confession to Young was not sufficiently corroborated. Under OCGA § 24-8-823 and its predecessor statute, OCGA § 24-3-53: "All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction."[2] Corroboration of a confession "in any particular" satisfied the requirements of former OCGA § 24-3-53. See *Sands v. State*, 262 Ga. 367, 367 (1) (418 SE2d 55) (1992). Here, Baker's confession to Young was corroborated by various evidence cited above, including the circumstances under which the victims were discovered and the various evidence of Baker's consciousness of guilt. See id. at 367-368 (1) (OCGA § 24-3-53 satisfied where trial testimony corroborated defendant's confession as to the defendant's presence at the location of the murder, the means by which the victim was killed, and the location where the victim's body was

---

[2] OCGA § 24-8-823 was carried forward from OCGA § 24-3-53 of the former Evidence Code, which governed Baker's 2011 trial. See *Thomas v. State*, 308 Ga. 26, 30 (2) (b) n.4 (838 SE2d 801) (2020). There is no specific corollary to this rule in the Federal Rules of Evidence. See Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 635 (9th ed. 2024).

found).[3]

Regarding sufficiency generally, Baker argues that it was not established that he was the author of the writings in the notebook or that the notebook referenced the shootings. To the extent that this sufficiency argument implicates his argument that the notebook was improperly admitted for lack of authentication, we consider even erroneously admitted evidence in determining sufficiency, see *Glenn v. State*, 306 Ga. 550, 553 (2) n.3 (832 SE2d 433) (2019), and, at any rate, as discussed below, we ultimately reject his argument that the notebook was improperly admitted. To the extent that the expressions of guilt in the notebook were not clearly referring to the shootings, that was for the jury to consider. Baker has not shown that the evidence was insufficient to sustain his malice murder or

---

[3] Baker's primary brief to this Court does not cite OCGA § 24-14-6, which provides that where a conviction is based on circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused[,]" or its predecessor in the former Evidence Code, former OCGA § 24-4-6. To the extent that he attempts to raise a claim under OCGA § 24-4-6, it also fails. See *Blevins v. State*, 291 Ga. 814, 816 (733 SE2d 744) (2012) (whether an alternative hypothesis was a reasonable one under OCGA § 24-4-6 was a principally a question for the jury).

firearms convictions as a matter of constitutional due process or Georgia statutory law.

2. Baker argues that the trial court plainly erred by failing to charge the jury on impeachment of Young based on Young's bias or motive to lie. We disagree.

Baker concedes that he did not preserve for ordinary appellate review an objection to the trial court's failure to give an instruction on impeachment for bias or motive and therefore this claim is subject to review only for plain error. See *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011) (establishing plain-error review for unpreserved jury instruction claims). This Court established the following test for determining whether there is plain error in jury instructions under OCGA § 17-8-58 (b):

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally,

if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Kelly*, 290 Ga. at 33 (2) (a) (citation and punctuation omitted; emphasis in original). If one prong of the plain error test is not satisfied, we need not address the other prongs of the test. See id. at 34 (2) (b) n.5. Satisfying this high standard "is difficult, as it should be." Id. at 33 (2) (a) (citation and punctuation omitted).

Here, Baker has not shown that it was obvious that the trial court should have given an instruction on impeachment of a witness for bias based on evidence about Baker's estranged relationship with Young. The trial court instructed the jury on its duty to determine the credibility and believability of witnesses. In particular, in its preliminary instructions to the jury, the trial court instructed the jury that in determining the credibility or believability of the witnesses, the jury might consider, among other things, the witnesses' "interest or lack of interest in the case[.]"And in its final charge to the jury, the trial court instructed the jury that in

13

determining witness credibility the jury might consider "all of the facts and circumstances of the case, the manner in which the witness testifies, their means and opportunity for knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony and the occurrences about which they testify[,]" as well as "their personal credibility insofar as it may have been shown in your presence and by the evidence." We have said that even assuming there was slight evidence supporting a charge on impeachment of a witness through bias toward a party, a charge asking jurors to consider a witness's "interest or lack of interest in the outcome of the case" substantially covered the omitted charge on bias such that there was no error in declining to give the additional charge. See *Isaac v. State*, 2024 WL 2138181, at \*7 (3) (Case No. S24A0014, decided May 14, 2024). Although the trial court here omitted the "interest or lack of interest" language from its final charge to the jury, the court did instruct the jury in its preliminary instructions that it was proper to consider a witness's interest or lack of interest in the case in

determining the witness's credibility. And Baker has not pointed to any binding case law showing that an additional instruction on bias was required on this record, and we have not found any. Thus, Baker has not shown that the failure to give an instruction on bias amounted to plain error. See *Simmons v. State*, 314 Ga. 883, 889-890 (2) (a) (880 SE2d 125) (2022) (no clear or obvious error where appellant did not point to any authority that additional charge was required).

3.      Baker argues that the trial court erred by admitting certain autopsy photos. We disagree.

During the medical examiner's testimony, the trial court admitted several pre-incision autopsy photos over Baker's objections that they were cumulative and were "probably meant to inflame more than anything else" because they showed Lynnale's breasts and pubic area in addition to gunshot wounds. The medical examiner testified that these photos were taken in the course of standard procedure in an effort to address questions such as range of fire and bullet trajectories. He also testified that when a photo

15

displays the breasts or sexual organs of a victim, that is because what is shown bears some relevance to the victim's wounds.

Baker argues that "[t]he prejudicial effect of these photos outweighed any alleged probative value and should have been excluded by the trial court" because "[r]easonable jurors' passions would have been inflamed upon viewing these exhibits and weighing the evidence against Baker[.]" The former Evidence Code did not have a provision providing for the exclusion of evidence when it was more prejudicial than probative, but we limited the admissibility of *post-incision* autopsy photos given the potential for prejudice and confusion. See *Brown v. State*, 250 Ga. 862, 866-867 (5) (302 SE2d 347) (1983), abrogated by the current Evidence Code as stated in *Venturino v. State*, 306 Ga. 391, 395-396 (2) (b) (890 SE2d 110) (2019).[4] Nonetheless, our former Evidence Code case law was clear that a trial court generally did not abuse its discretion in admitting

---

[4] Of course, OCGA § 24-4-403 now specifically provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

16

*pre-incision* autopsy photos showing the location and nature of a victim's wounds, even if they were duplicative, even if they might "inflame" the jury, and even if the cause of death was not in dispute. See, e.g., *Johnson v. State*, 289 Ga. 106, 107-108 (2) (709 SE2d 768) (2011). Although the three autopsy photos that Baker challenges on appeal included Lynnale's breast or pubic area, they also show the location of her wounds, and we cannot say that the trial court abused its discretion by admitting these photos. See, e.g., id. at 108 (2) (trial court did not abuse its discretion in admitting pre-incision autopsy photographs into evidence); *Miller v. State*, 277 Ga. 707, 709 (2) (593 SE2d 659) (2004) (no abuse of discretion when trial court admitted pre-incision autopsy pictures depicting the location and nature of the victim's wounds); *Rucker v. State*, 270 Ga. 431, 433-434 (4) (510 SE2d 816) (1999) (no error in admitting pre-incision autopsy photograph showing that a bra stay infiltrating a gunshot wound).

4. Finally, Baker argues that the trial court abused its discretion by admitting the notebook taken from his truck. We disagree.

17

Baker argues that the notebook should not have been admitted because the State did not establish that the writing was his.[5] Under the former Evidence Code, our case law provided that the genuine nature of a letter or note may be proved by circumstantial evidence and need not be authenticated by a handwriting expert. See *Johnson v. State*, 273 Ga. 872, 873 (1) (548 SE2d 292) (2001).[6] Here, Baker's notebook was authenticated by both its contents and the location in which it was found. The writing within the notebook began with the statement, "My name is Kenneth Lee Baker"; included Baker's address along with the names and contact information for Baker's family, including the phone number listed for Young that Baker called on the morning of the shooting; listed assets, including the "1995 Mazda Pickup" — the same type of vehicle from which the notebook was collected; and included a page signed by "Kenny

---

[5] Baker notes that he also raised a chain-of-custody objection at trial. But he offers no argument in support of such an objection on appeal, so it is abandoned. See former Supreme Court Rule 22 ("Any enumerated error not supported by argument or citation of authority in the brief shall be deemed abandoned.").

[6] The current Evidence Code now contains a comprehensive authentication statute that is nearly identical to a federal rule. See OCGA 24-9-901; *Nicholson v. State*, 307 Ga. 466, 476 (5) n.6 (837 SE2d 362) (2019).

Baker" and dated "8-3-10[.]" And the notebook was found in Baker's vehicle. Although Baker points to factual differences between his case and the authentication case law cited by the State, we cannot say that the trial court abused its discretion in overruling Baker's authentication objection and admitting the notebook. See *Foster v. State*, 294 Ga. 383, 384-385 (3) (754 SE2d 33) (2014) (circumstances were sufficient to make prima facie showing of authenticity of letter putatively written by the defendant where the letter referenced the recipient's relatives and friends, discussed the pending charges, contained the defendant's jail cell number, and was signed by an alias of the defendant, and the recipient testified that she knew that it was from the defendant "based on the names and the content of the letter"); *Arevalo v. State*, 275 Ga. 392, 395-396 (5) (567 SE2d 303) (2002) (citing contents of a letter, in addition to other circumstances, in concluding that circumstances were sufficient to make a prima facie showing of the writing's authenticity); *State v. Smith*, 246 Ga. 129, 130 (269 SE2d 21) (1980) ("While possession alone is insufficient to establish a prima facie showing of authenticity, it

should be recognized that possession, together with other circumstances, may meet the burden [to show authenticity]." (citation and punctuation omitted)).

*Judgment affirmed. All the Justices concur.*