**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: December 9, 2025

S25A1017. MONTGOMERY v. THE STATE.

LAGRUA, Justice.

Appellant Sherrod Montgomery appeals his conviction for felony murder related to the beating death of Ricky Cox.[1] On appeal, Montgomery argues that his conviction should be reversed based on the following contentions: (1) the trial court erred by entering a conviction for felony murder predicated on aggravated battery,

---

[1] Cox died from his injuries on May 21, 2021. On September 1, 2021, a Carroll County grand jury indicted Montgomery for the following counts: malice murder (Count 1); felony murder predicated on aggravated battery (Count 2); aggravated assault (Count 3); and aggravated battery (Count 4). Montgomery was tried from January 9 to 13, 2023, and the jury found Montgomery not guilty of malice murder but guilty on the remaining counts. The trial court sentenced Montgomery to life with the possibility of parole on Count 2 (felony murder) and merged the remaining counts with the felony murder conviction. Montgomery filed a timely motion for new trial, which he later amended through new counsel on September 15, 2024. After holding an evidentiary hearing on the motion for new trial, the trial court denied the motion on September 30, 2024. Montgomery filed a timely notice of appeal to this Court, and the case was docketed to the August 2025 term and orally argued on August 26.

which requires malice, after the jury rejected the essential element of malice by rendering a not guilty verdict on malice murder; and (2) the trial court plainly erred by instructing the jury that it could find felony murder predicated on aggravated battery without finding malice. For the reasons that follow, we affirm Montgomery's conviction and sentence.

The evidence presented at trial demonstrates that, around midnight on May 20, 2021, law enforcement officers were called to a residence in Carroll County. The residence was owned by Donnie Green and was "generally known" as "kind of a hangout spot where people go and drink, play cards, just hang out, socialize." When law enforcement officers arrived at Green's house, they encountered three people in the living room—brothers Jesse and Charles Dallas and Lisa Miley, Jesse's ex-girlfriend.[2] A fourth person—later identified as Ricky Cox—was lying unresponsive on the couch in the living room with "a swollen left eye" and "swelling of his face." Law

---

[2] The record reflects that Jesse lived with Green at this house, but Green was not at home on the night in question.

enforcement officers learned from Jesse and Charles that Cox had been involved in a physical altercation with Montgomery earlier that night and that Montgomery left Green's house immediately after the incident.

According to several witnesses, on the night of May 20, Montgomery, Cox, Jesse, and Charles were playing a game of cards in the kitchen of Green's house. Cox was visibly intoxicated at the time. During the second hand of the game, Cox refused to play and accused Montgomery—who was the dealer of that hand—of cheating by refusing to "show his cards." Jesse, Charles, and Montgomery finished playing the hand without Cox, and then, Montgomery "went across the table and hit [Cox]," who fell to the floor and "didn't get up."[3] Montgomery walked over to Cox and continued hitting and kicking him while he was "still on the floor." Jesse tried to stop

---

[3] At trial, conflicting testimony was given about whether Cox was armed with a pocketknife at the time of this incident. One witness testified that she saw Cox reach in his pocket for a pocketknife, and another said he knew Cox to carry a pocket-knife and saw him with a "folded" pocketknife when he was laying on the floor. However, several other eyewitnesses said they had never known Cox to carry a pocketknife, and he did not have a knife on him or threaten anyone with a knife that night.

Montgomery, and after a few minutes, Montgomery stopped striking Cox and left Green's house. Cox remained on the floor, "breathing hard." Jesse and Charles carried Cox into the living room with the assistance of Carleton Nunn, who lived in the shed behind Green's house, and laid Cox on the couch. Around this time, Miley arrived at Green's house, and after noting that Cox was bleeding from his mouth and seemed to be unconscious, she called 911 and reported the incident. Law enforcement officers arrived shortly thereafter, and Cox was transported to the hospital, where he later died from his injuries.[4] The next morning, Montgomery was arrested for Cox's murder.

1. In his first enumeration of error, Montgomery contends that he is entitled to a new trial because the jury's verdicts in this case were repugnant, relying on *McElrath v. State*, 308 Ga. 104, 111–12

---

[4] At trial, the medical examiner testified that Cox had areas of bruising on his face, scalp, and upper body; internal bleeding; 15 fractured ribs; and 4 lacerations of the heart. The medical examiner testified that the cause of death was "blunt force injuries related to a physical altercation," and the manner of death was homicide.

(2020). As noted above, Montgomery was charged with malice murder (Count 1), felony murder predicated on aggravated battery (Count 2), aggravated assault (Count 3), and aggravated battery (Count 4) based on Montgomery striking and kicking Cox, ultimately leading to Cox's death. The jury found Montgomery not guilty of malice murder, but guilty of felony murder, aggravated assault, and aggravated battery. On appeal, Montgomery argues that, because the jury found him not guilty of malice murder (Count 1), the jury could not legally or logically have found him guilty of felony murder predicated on aggravated battery (Count 2) because malice murder and aggravated battery share the same essential element of malice and Montgomery could not simultaneously have acted without malice in causing the death of Cox and with malice in committing the aggravated battery of Cox. We disagree.

"Repugnant verdicts occur when, in order to find the defendant not guilty on one count and guilty on another, the jury must make affirmative findings shown on the record that cannot logically or legally exist at the same time." *Caldwell v. State*, 317 Ga. 507, 511

(2023) (quotation marks omitted). We have held that, when verdicts are repugnant, the guilty verdict must be vacated. See *McElrath v. State*, 319 Ga. 539, 540 (2024) (noting that the United States Supreme Court's decision in *McElrath v. Georgia*, 601 US 87, 96 (2024), requires only vacating the guilty verdict).

Here, the jury's verdicts are not repugnant because they can "logically co-exist." *Caldwell*, 317 Ga. at 511. We have held that "[t]here is an important difference between the 'malice' required for malice murder and the 'malice' required for aggravated battery." *Pope v. State*, 286 Ga. 1, 2–3 (2009). "The former is the unlawful intention to *kill* without justification, excuse or mitigation," and "[t]he latter is an actual intent to cause the particular *harm* produced (that is, bodily harm) without justification or excuse." Id. at 3 (quotation marks omitted). Thus, a defendant "might have had malice in the form of the intent to cause *bodily harm* with no malice in the form of the intent to *kill*, and yet death might still occur; in such a case the defendant would be guilty of felony murder but not malice murder." Id. So here, the jury could have found that

Montgomery intended to seriously injure Cox (and thus that the malice element of aggravated battery was satisfied) but did not intend to kill him (and thus that the malice element of malice murder was not satisfied). Because the jury's verdicts could logically co-exist in that way, they were not repugnant. See id.

Moreover, as noted above, repugnant verdicts require the jury to have made—in rendering its guilty and not guilty verdicts— "affirmative findings shown on the record that cannot logically or legally exist at the same time." *Caldwell*, 317 Ga. at 511. And the record here does not reflect any affirmative findings by the jury as to its rationale in returning a not guilty verdict on the malice murder count and a guilty verdict on the felony murder predicated on aggravated battery count. Compare *Guajardo v. State*, 290 Ga. 172, 174 (2011) (holding that repugnant verdicts require reversal "in the rare instance where, instead of being left to speculate as to the jury's deliberations, the appellate record makes transparent the jury's rationale"). In the absence of such affirmative findings, determining the basis for the jury's not guilty verdict on the malice murder count

7

and guilty verdict on the felony murder predicated on aggravated battery count "would be based on either pure speculation, or would require inquiries into the jury's deliberation that the courts generally will not undertake." *Feder v. State*, 319 Ga. 66, 69 (2024) (quotation marks omitted). See also *State v. Owens*, 312 Ga. 212, 216–17 (2021) (noting that "inconsistent verdicts"—which occur "when a jury in a criminal case renders seemingly incompatible verdicts of *guilty* on one charge and *not guilty* on another"—are permitted to stand "because the jury's rationale is not apparent from the record and courts generally are not permitted to make inquiries into the jury's deliberation process"). "We cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense. The reason could be … compromise or lenity." *Feder*, 319 Ga. at 69 (quotation marks omitted). Likewise, here, we do not know and will not speculate as to why the jury found Montgomery not guilty of malice murder, but guilty of felony murder predicated on aggravated battery. Accordingly, Montgomery's repugnant verdict claim fails.

8

2. Montgomery next contends that the trial court committed plain error by instructing the jury that, to prove felony murder, the State did not have to show that Montgomery acted with malice. In furtherance of this claim, Montgomery argues that, while such an instruction is generally correct, it was erroneous here because the predicate felony of aggravated battery requires proof of malice. We see no plain error.

During the charge conference in this case, the trial court advised the parties that it would charge the jury utilizing the pattern jury instructions, and the parties raised no objection. Following closing arguments, the trial court so instructed the jury, specifically charging, in relevant part, the following with respect to malice murder: "The killing must have been done with malice to be murder. Malice, as the term is used here, is not necessarily ill will or hatred. Rather, it is the unlawful intent to kill without justification." The trial court then distinguished felony murder from malice murder, while also incorporating the predicate offense of aggravated battery, charging the jury, in relevant part, as follows:

9

> For felony murder, the State must prove that the Defendant caused the death of another person by committing a felony. The State does not have to show that the Defendant acted with malice to prove felony murder. Aggravated battery is a felony which I will define for you shortly. You may find the Defendant guilty of felony murder if you believe that he caused the death of another person by committing the felony of aggravated battery regardless of whether he intended … death to occur.

Thereafter, the trial court instructed the jury on the material elements of aggravated battery, charging, in relevant part, as follows:

> For aggravated battery, the State must prove that the Defendant one, maliciously caused bodily harm to another person, two, by rendering a part of that person's body useless…. In deciding whether or not the Defendant acted maliciously … understand that malice is not ill will or hatred. Malice, in this context, means an intent to cause the resulting bodily harm without justification or excuse. Malice also means willfully doing an act while aware of a strong likelihood that that particular bodily harm may result.

On appeal, Montgomery concedes that he did not object to the jury instructions at trial, so we review this alleged instructional error for plain error only. See *State v. Kelly*, 290 Ga. 29, 32 (2011) ("[U]nder OCGA § 17-8-58(b), appellate review for plain error is

required whenever an appealing party properly asserts an error in jury instructions.").

"To prevail on plain-error review, an appellant must show that the alleged instructional error was not affirmatively waived; was clear and obvious, rather than subject to reasonable dispute; likely affected the outcome of the trial; and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bowdery v. State*, 321 Ga. 890, 898 (2025) (quotation marks omitted). "If one prong of the plain error test is not satisfied, we need not address the other prongs of the test." *Baker v. State*, 319 Ga. 456, 462 (2024). "Satisfying this high standard is difficult, as it should be." Id. (quotation marks omitted).

> To that end, it is not enough in the plain-error context for an appellant to demonstrate that a trial court committed actual legal error in charging the jury; rather, the jury instruction in question must have an obvious defect rather than a merely arguable defect. This means that, to show clear and obvious error, an appellant must cite to controlling authority or to the unequivocally clear words of a statute or rule that plainly establish that the trial court erred.

*Bowdery*, 321 Ga. at 898–99 (quotation marks omitted).

On appeal, Montgomery argues that the trial court charged the jury that it did not have to find malice for felony murder, but because the underlying felony of aggravated battery required proof of "malice," it effectively instructed the jury that the felony murder charge did not require proof of the requisite criminal intent to commit the underlying felony. He contends that this instructional error was clear and obvious because, to obtain a conviction, the State is required to prove every element of the crimes charged beyond a reasonable doubt, and proving the offense of felony murder requires proof of the elements of the predicate felony. While the trial court's jury instruction may have been somewhat confusing in this case and a better instruction would have explicitly explained the differences in the malice standards, we disagree that the trial court clearly or obviously erred in giving the jury instructions here.

To evaluate whether a trial court plainly erred in giving the jury instructions, "we read and consider the instructions as a whole." *Holloway v. State*, 320 Ga. 653, 659 (2025) (quotation marks omitted). And, after considering the trial court's jury instructions as a whole,

we conclude that the trial court (1) properly instructed the jury as to the different meanings of "malice" in the contexts of malice murder and aggravated battery, see *Pope*, 286 Ga. at 2–3; (2) properly instructed the jury that felony murder does not require proof of malice as that term is defined for malice murder, but does require proof of the elements of the predicate offense, aggravated battery, see *Burley v. State*, 316 Ga. 796, 803 (2023) ("As this Court has explained, the main difference between felony murder and malice murder is that felony murder does not require proof of malice or intent to kill."); (3) properly instructed the jury that it was required to consider the predicate offense of aggravated battery and then properly defined that offense, see OCGA § 16-5-24(a)[5]; and (4) properly instructed the jury as to the State's burden of proof in order to find Montgomery guilty of aggravated battery, see *Burley*, 316 Ga. at 804 (holding that the State was required to prove beyond a reasonable doubt that the

---

[5] OCGA § 16-5-24(a) provides that "[a] person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof."

appellant committed the predicate offense charged in the indictment).

Having evaluated the disputed felony murder charge in the context of the jury instructions as a whole, we conclude that Montgomery has failed to show that the trial court committed clear or obvious error in charging the jury in this case. See *Sauder v. State*, 318 Ga. 791, 804 (2024) (concluding that, "when evaluated in the context of the jury charge as a whole, the trial court's failure to expressly instruct" using the language the appellant suggests "was not a clear and obvious error beyond reasonable dispute"). And, thus, we need not analyze the remaining prongs of the plain-error standard. See *Walton v. State*, ___ Ga. ___ (2025), S25A0794, slip op. at 18 (Ga. Aug. 26, 2025) ("[T]his Court need not analyze all prongs of the plain error standard where the appellant fails to establish any one of them."). Therefore, this final claim also fails.

*Judgment affirmed. All the Justices concur.*